[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11249

Non-Argument Calendar

_____

DIEGO MERINO-DE JESUS,

                                                    Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

                                                    Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A205-655-946

_____

Before JILL PRYOR, NEWSOM, and BRANCH, Circuit Judges.

PER CURIAM:

Diego Merino-De Jesus, a native and citizen of Mexico, entered the United States illegally in 1999. After conceding removability, he filed for withholding of removal and protection under the Convention Against Torture. An Immigration Judge denied relief, and the Board of Immigration Appeals affirmed. Because the BIA's conclusions are legally sound and supported by substantial evidence, we deny Merino-De Jesus's petition for review.

I

At the age of 15, Merino-De Jesus crossed the U.S.-Mexico border without authorization. He eventually made his way to Florida, and for several years worked various jobs in the construction industry. In 2012, after Merino-De Jesus was arrested for driving with a suspended license, the Department of Homeland Security served him with a notice to appear. At the ensuing proceedings, Merino-De Jesus conceded removability. But he was temporarily granted relief in the form of Deferred Action for Childhood Arrivals (DACA).

This relief, however, proved to be temporary. Merino-De Jesus lost his DACA eligibility following a DUI conviction in 2016. His case was then re-calendared before an IJ, and Merino-De Jesus applied for withholding of removal and CAT relief.

In support of his requests, Merino-De Jesus explained that his father beat him when he was young.  This caused him to live on the streets, where he was often harassed by "Los Locos," an alleged gang.  In addition, Merino-De Jesus testified that his fear of persecution stemmed from his membership in the indigenous Triqui Tribe.  He said that his uncle Juan Merino—the leader of his tribal village—was murdered around 1998, supposedly because he wanted to help the village.  Another uncle, Alberto Merino, took over, and Merino-De Jesus believes that Alberto still advocates on behalf of the village.  Merino-De Jesus testified that he feared for his life should he return to Mexico, because of his membership in the Triqui Tribe and his familial relation to Juan and Alberto.  He also feared that a group of Triqui fighters known as MULT would attack him, suspecting that he had money.

The IJ denied relief.  As to Merino-De Jesus's fear of the two groups, the IJ found that he had never been harmed by MULT, and the harm he received at the hands of Los Locos did not rise to the level of persecution.  Nor did Merino-De Jesus establish that any statutorily protected ground was a central reason why the gang had targeted him, or why MULT might target him in the future.  Instead, Los Locos primarily harassed him because they wanted money and to recruit him as one of their own.  And Merino-De Jesus himself believed that MULT would come after him because of his perceived wealth—not on the basis of any protected ground.

With respect to Merino-De Jesus's fear of his father, the IJ found that he had established past persecution on account of his

membership in his father's family.  But any presumption of fear created by his father's past abuse was rebutted by the record.  In particular, the IJ observed that Merino-De Jesus hadn't been beaten since 1993; thus, he had already lived in Mexico for six years without his father harming him before he moved to the United States.  Merino-De Jesus was also now much older, and as a full-grown adult, there was no reason why he would have to live with his father upon returning to Mexico.

Accordingly, the IJ concluded that Merino-De Jesus hadn't established that he would more likely than not be persecuted because of a statutorily protected characteristic, which is a showing necessary for withholding of removal.  Nor did he establish eligibility for CAT protection, as there was no evidence suggesting that he would more likely than not be tortured by or with the acquiescence of the Mexican government.  The BIA then affirmed the IJ's removal order, largely for the reasons stated in the IJ's opinion.

## II

Generally, "[w]hen the BIA issues a decision, we review only that decision." *Jeune v. U.S. Att'y Gen.*, 810 F.3d 792, 799 (11th Cir. 2016).  But where, as here, "the Board explicitly agreed with several findings of the immigration judge, we review the decisions of both the Board and the immigration judge as to those issues." *Ayala v. U.S. Att'y Gen.*, 605 F.3d 941, 948 (11th Cir. 2010).  Although our review of the agency's legal determinations is de novo, we review administrative fact findings only for "substantial evidence." *Id.* Under that "highly deferential" standard, we must affirm the BIA's

decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026–27 (11th Cir. 2004) (en banc) (quotation omitted). This requires us to view the evidence "in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Id.* at 1027. A decision "can be reversed only if the evidence 'compels' a reasonable fact finder to find otherwise." *Kueviakoe v. U.S. Att'y Gen.*, 567 F.3d 1301, 1304 (11th Cir. 2009) (per curiam) (quotation omitted); *see* 8 U.S.C. § 1252(b)(4)(B). That's not the case here.

## A

Start with the withholding-of-removal claim. To qualify for withholding of removal, an individual must show that, if returned to his country, his "life or freedom would be threatened" on account of "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); *see Sanchez-Castro v. U.S. Att'y Gen.*, 998 F.3d 1281, 1286 (11th Cir. 2021). An applicant can meet his burden of proof on this front in either of two ways. *Seck v. U.S. Att'y Gen.*, 663 F.3d 1356, 1365 (11th Cir. 2011). First, he "may establish past persecution in [his] country based on a protected ground, which creates a rebuttable presumption that [his] life or freedom would be threatened in the future in that country." *Id.*; *see* 8 C.F.R. § 208.16(b)(1). Second, he may rely on traditional, circumstantial evidence to establish the likelihood of a future threat to his life or freedom. *See Seck*, 663 F.3d at 1365; 8 C.F.R. § 208.16(b)(2).

The BIA found that Merino-De Jesus had established past persecution based on his father's beatings. But even assuming membership in his father's family is a cognizable social group, substantial evidence supports the agency's decision that the presumption of future persecution had been rebutted. First, the last time Merino-De Jesus's father had beaten him was in 1993. That means he thereafter lived in Mexico for six years without further incident. Second, there is no evidence that Merino-De Jesus's father sought him out or had contact with him in the following two decades that Merino-De Jesus spent in the United States. Third, Merino-De Jesus is now an adult, and he conceded that he wouldn't have to live with his father—who he wasn't even sure was still alive. Fourth, the BIA found—and Merino-De Jesus does not dispute—that he could relocate to another part of Mexico, away from his father. *See* 8 C.F.R. § 208.16(b)(2) (providing that "an applicant cannot demonstrate that his or her life or freedom would be threatened" if he can "avoid a future threat to his or her life or freedom by relocating to another part of the proposed country of removal"). Together, this evidence more than suffices to support the BIA's conclusion.

Next, Merino-De Jesus contends that he fears persecution at the hands of Los Locos or MULT. But the BIA found (1) that his past incidents with Los Locos didn't amount to persecution and (2) that Merino-De Jesus failed to establish that any statutorily protected ground was a "central reason" for the alleged persecution—either in the past or as he fears in the future. The record doesn't

compel us to conclude otherwise as to either finding. *See Kuevia-koe*, 567 F.3d at 1304.

As to the first, persecution is an "extreme concept," which requires more than "mere harassment" or "a few isolated incidents of verbal harassment or intimidation." *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1353 (11th Cir. 2009) (quotation omitted). Moreover, a showing of "[m]inor physical abuse" does not suffice. *Id.* Merino-De Jesus testified that Los Locos would harass him for money and, when he wouldn't give them anything, beat him and call him names. Even so, Merino-De Jesus didn't present any evidence of "significant or severe physical injuries." *Martinez v. U.S. Att'y Gen.*, 992 F.3d 1283, 1292 (11th Cir. 2021). Nor did he present any testimony as to the frequency of the alleged beatings or any other form of severe mistreatment. As a result, we cannot say that the record compels a finding of past persecution by the gang. *See Kazemzadeh*, 577 F.3d at 1353 (holding that the record didn't compel a finding of persecution where the petitioner was "interrogated and beaten for five hours," because he "did not prove that he suffered any physical harm"); *Djonda v. U.S. Att'y Gen.*, 514 F.3d 1168, 1174 (11th Cir. 2008) (same where petitioner "suffered a minor beating" resulting in only "scratches and bruises"); *Murugan v. U.S. Att'y Gen.*, 10 F.4th 1185, 1192–93 (11th Cir. 2021) (same where, during a four-day detention, petitioner "was tied to a chair, slapped, and kicked"); *Martinez*, 992 F.3d at 1291–92 (same despite a beating that left the petitioner "briefly unconscious and with a cut on his head").

The BIA's finding that Merino-De Jesus failed to establish the nexus requirement is also supported by substantial evidence. To prove that persecution is "because of" a statutorily protected ground, 8 U.S.C. § 1231(b)(3)(A), an immigrant must show that the protected ground "was a central reason for the harm [he] suffered or feared that [he] would suffer." *Sanchez-Castro*, 998 F.3d at 1286. Merino-De Jesus says that Los Locos targeted him because of his race and religion. But citing Merino-De Jesus's own testimony, the BIA found that the overarching reason that Los Locos harassed him was that they wanted money and for him to join their group. The agency was entitled as the factfinder to accept that explanation and to reject Merino-De Jesus's later speculation as to alternative motives. *See id.* at 1286–87; *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1258 (11th Cir. 2006) (per curiam) (holding that evidence that "is consistent with acts of private violence or the petitioner's failure to cooperate" with a criminal organization, "or that merely shows that a person has been the victim of criminal activity, does not constitute evidence of persecution based on a statutorily protected ground").

Merino-De Jesus's fear of MULT fails for the same reason. He worries that the organization would target him for his perceived wealth. Yet even if that's true, such speculation about a "generic pecuniary motive" does not establish a link between the harm Merino-De Jesus fears and any statutorily protected ground. *Sanchez-Castro*, 998 F.3d at 1287.

Merino-De Jesus last insists that he will be killed due to his relationship to his uncles and membership in the Triqui Tribe. But as the IJ noted, there is no evidence that Merino-De Jesus was harmed in the past because of his membership in these particular social groups. And unlike his uncles, Merino-De Jesus doesn't plan on being politically active. The IJ also found that Merino-De Jesus's testimony as to the conditions he would face in Mexico was "very speculative." He hasn't been to the country in over two decades, and he hasn't had contact with anyone from Mexico during most of that span. Nor did Merino-De Jesus present any documentary evidence or testimony from others to corroborate his contentions. Finally, the IJ found that Merino-De Jesus could reasonably move to a different area of Mexico to avoid the harm that he fears. *See* 8 C.F.R. § 208.16(b)(2). Again, he doesn't contest that finding on appeal.

In short, we cannot say that the record compels a finding that Merino-De Jesus would more likely than not be persecuted because of a statutorily protected ground upon his return to Mexico. That is fatal to his withholding-of-removal claim.

## B

Merino-De Jesus fares no better on his request for CAT relief. An applicant seeking CAT protection must establish "that it is more likely than not that he . . . would be tortured if removed to the proposed country of removal." *Reyes-Sanchez v. U.S. Att'y Gen.*, 369 F.3d 1239, 1242 (11th Cir. 2004) (quoting 8 C.F.R. § 208.16(c)(2)). For CAT purposes, torture involves "'an[] act by

which severe pain or suffering . . . is inflicted by or at the instigation of or with the consent or acquiescence of a government official or other person acting in an official capacity." *Sanchez-Castro*, 998 F.3d at 1288 (alterations in original) (quoting 8 C.F.R. § 208.18(a)(1)).

Substantial evidence supports the agency's determination that Merino-De Jesus doesn't qualify for CAT protection. As he admitted, he had never been harmed by the Mexican authorities. And he does not allege that he would be. So, even if we assume Merino-De Jesus has established a sufficient likelihood of being tortured, that's not enough for him to prevail. He must show that the government would acquiesce in that torture. The record does not "compel" this finding. *Lingeswaran v. U.S. Att'y Gen.*, 969 F.3d 1278, 1293 (11th Cir. 2020). Merino-De Jesus testified that he never filed a police report following the incidents of harm he experienced in Mexico, which undermines his claim that the police would turn a blind eye should he be tortured in the future. And, though he points out that nobody was arrested or brought to justice for his uncle's murder, we have rejected such an argument in the past. "That the police did not catch the culprits does not mean that they acquiesced in the harm." *Reyes-Sanchez*, 369 F.3d at 1243; *see Sanchez-Castro*, 998 F.3d at 1288; *Zaldana Menijar v. Lynch*, 812 F.3d 491, 502 (6th Cir. 2015). Thus, Merino-De Jesus's CAT claim fails.

★  ★  ★

**PETITION DENIED.**