[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-15091

_____

Agency No. A205-734-452

KELLY SANCHEZ-CASTRO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(June 1, 2021)

Before WILLIAM PRYOR, Chief Judge, LUCK and ED CARNES, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

Kelly Sanchez-Castro, a native of El Salvador, petitions for our review after she unsuccessfully sought relief from removal because a gang targeted her family based on the assumption that her father's work in the United States made it

wealthy. The Board of Immigration Appeals denied her applications for asylum, withholding of removal, and protection under the Convention Against Torture, and substantial evidence supports its decision. Sanchez-Castro is ineligible for asylum and withholding of removal because the gang that targeted her family did so only as a means to the end of obtaining funds, not because of any animus against her family. And she is ineligible for protection under the Convention Against Torture because she has not established that any harm she will suffer if returned to her home country will come with at least the acquiescence of a government official. We deny Sanchez-Castro's petition for review.

## I. BACKGROUND

Kelly Sanchez-Castro is a citizen of El Salvador who entered the United States in December 2012. She was detained after she reached a border patrol checkpoint without any immigration documents. The government charged her as removable due to her lack of valid entry documents. 8 U.S.C. § 1182(a)(7)(A)(i)(I).

Sanchez-Castro conceded that she was removable but applied for asylum, withholding of removal, and protection under the Convention Against Torture. She asserted that she had been and would be persecuted in El Salvador based on her membership in a particular social group: a nuclear family with a father abroad. In her view, the gang Mara Salvatrucha—better known as MS-13—targeted her family because her father lived in the United States.

2

In November 2017, Sanchez-Castro testified before an immigration judge about her applications for relief. She explained that her father moved to the United States in 2000 to find work. Based on his residence abroad, the gang assumed that Sanchez-Castro's family had money, and they began to extort her mother. The gang threatened to rape and kill her family if Sanchez-Castro's mother did not comply.

Sanchez-Castro recounted the threats and harassment that she and her siblings faced. On one occasion, a gang member pointed a gun at Sanchez-Castro while she was playing on the roof of the family home. On another occasion, gang members attempted to kidnap Sanchez-Castro and her sister; Sanchez-Castro escaped, and the gang later released her sister based on their mother's previous payments. As Sanchez-Castro grew older, gang members began to sexually harass her—they wanted her to be "their woman." Gang members also stole or attempted to steal the family's possessions, including a bicycle and a golden ring. And a gang member once shoved Sanchez-Castro's brother after he wore a shirt emblazoned with a number associated with a rival gang.

Sanchez-Castro's family occasionally called the police in response to these events. Although Sanchez-Castro testified that the police never came, she confirmed that gang members would run away after the family made these calls. Sanchez-Castro explained that Mara Salvatrucha had spotters on the streets to warn

if the police were arriving and that the gang wanted to recruit her brothers to become spotters.

Sanchez-Castro testified that she and her immediate family fled to the United States. She first arrived in 2008. After four years here, she followed her then-boyfriend to Honduras when he was deported. She found that Honduras was unsafe, so she left within six months. When she attempted to return to the United States, she was apprehended by border patrol agents. Her family continues to live in Georgia.

Sanchez-Castro also testified that Mara Salvatrucha threatened and harassed her extended family after her nuclear family left El Salvador. When her mother's stepsister moved into the Sanchez-Castro family home, gang members demanded title to the home. They extorted the stepsister and kidnapped and raped her daughter. After the gang threatened to kill the stepsister unless she abandoned the house, she left, and the gang took over the house and the belongings within it. Sanchez-Castro expressed fear that Mara Salvatrucha would kill her if she returned to El Salvador, and she stated that her extended family would not help her because it did not want to draw the attention of the gang.

No other witnesses testified. The immigration judge declined to hear testimony from Sanchez-Castro's father because he had no personal knowledge of the events in El Salvador. Her mother and siblings refused to testify because they

4

feared being deported too. Sanchez-Castro instead provided the immigration judge with a variety of supporting documents, including statements from her mother and siblings about the harm they faced in El Salvador, statements establishing that three of her extended family members had been killed by gangs or other violence, and reports about gang violence in El Salvador.

The immigration judge denied Sanchez-Castro's applications for relief. Although he found her credible, he found that Sanchez-Castro's experience in El Salvador did not rise to the level of past persecution. He also found that Sanchez-Castro did not have a well-founded fear of future persecution because her fears were based on general gang violence, which is not a statutorily protected ground for relief. Because she failed to satisfy her burden of proof for asylum, she could not meet the higher burden for withholding of removal. And she was not eligible for protection under the Convention Against Torture because she had not established that it was more likely than not that she would be tortured if she were returned to El Salvador.

The Board of Immigration Appeals dismissed Sanchez-Castro's appeal. It explained that she was not eligible for asylum or withholding of removal because she had not established that a protected ground was a central reason for either past or feared future persecution. Citing *Matter of L-E-A-*, 27 I. & N. Dec. 40, 44–45 (B.I.A. 2017), the Board distinguished between when "a persecutor targets a family

5

member as a means to an end," like the gang did here, and when a persecutor is motivated by "animus against the family per se." The former is not by itself enough to obtain relief, but the latter can be. The Board also agreed with the reasoning of the immigration judge as to Sanchez-Castro's Convention Against Torture claim.

After Sanchez-Castro petitioned this Court for review, the government moved to remand the matter to the Board. It pointed out that *Matter of L-E-A-* was not yet final because the Attorney General had stayed that decision pending his review. And it argued that remand was appropriate so that the Board could clarify its analysis in the light of the finality issue. We vacated the order of the Board and granted the motion to remand.

A few weeks later, the Attorney General issued his decision in *Matter of L-E-A-*, 27 I. & N. Dec. 581 (A.G. 2019). He concluded that a nuclear family ordinarily will not qualify as a particular social group, so family-based claims for relief will rarely be successful under the Immigration and Nationality Act. *Id.* at 589. But he "le[ft] . . . undisturbed" the Board's analysis of the circumstances in which membership in a family constitutes a central reason for persecution. *Id.* at 597.

On remand, the Board again dismissed Sanchez-Castro's appeal. It acknowledged the holding in *Matter of L-E-A-* but noted that the decision of the

6

Attorney General did not bear on the issue it had earlier considered in Sanchez-Castro's case. So the Board readopted its earlier conclusions.

## II. STANDARDS OF REVIEW

We review only the decision of the Board, except to the extent that the Board expressly adopted the decision of the immigration judge. *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009). We review conclusions of law *de novo* and findings of fact for substantial evidence. *Id.* The substantial-evidence standard is highly deferential: we view the record in the light most favorable to the decision of the Board and affirm if the decision is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* at 1351 (internal quotation marks omitted). We may not reverse a finding of fact unless the record compels reversal. *Id.*

## III. DISCUSSION

We divide our discussion in two parts. We first review whether substantial evidence supports the finding that Sanchez-Castro has failed to establish a nexus between the identity of her nuclear family and her asserted persecution. Because it does, she does not qualify for asylum or withholding of removal. We then review whether substantial evidence supports the finding that Sanchez-Castro has not proved government acquiescence in any torture she faces if returned to El

7

Salvador. Because it does, we likewise agree that Sanchez-Castro does not qualify for protection under the Convention Against Torture.

### A. Substantial Evidence Supports the Finding that Sanchez-Castro Has Failed to Satisfy the Nexus Requirement for Asylum and Withholding of Removal.

We determine eligibility for asylum and for withholding of removal based on related inquiries. To be eligible for asylum, an applicant must prove either past persecution "on account of" a statutorily protected ground or a well-founded fear that a protected ground will cause future persecution. *Diallo v. U.S. Att'y Gen.*, 596 F.3d 1329, 1332 (11th Cir. 2010). To be eligible for withholding of removal, an applicant must prove that it is more likely than not that she will be persecuted or tortured because of a protected ground if returned to her home country. *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1232 (11th Cir. 2005). The "more likely than not" standard is more demanding than the "well-founded fear" standard, so an applicant who is ineligible for asylum is necessarily ineligible for withholding of removal. *Id.*; *Djonda v. U.S. Att'y Gen.*, 514 F.3d 1168, 1177 (11th Cir. 2008).

Both standards contain a causal element known as the nexus requirement. *Perez-Sanchez v. U.S. Att'y Gen.*, 935 F.3d 1148, 1158 (11th Cir. 2019). An applicant must establish that a protected ground "was or will be at least one central reason for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i); *see Perez-Sanchez*, 935 F.3d at 1158. A reason is central if it is "essential" to the motivation

8

of the persecutor. *Parussimova v. Mukasey*, 555 F.3d 734, 740 (9th Cir. 2009) (internal quotation marks omitted). In other words, "the protected ground cannot play a minor role in the alien's past mistreatment or fears of future mistreatment. That is, it cannot be incidental, tangential, superficial, or subordinate to another reason for harm." *Id.* at 741 (internal quotation marks omitted). Any past or feared future persecution must be at least in significant part "because of" the protected ground. *See Rodriguez Morales v. U.S. Att'y Gen.*, 488 F.3d 884, 891 (11th Cir. 2007).

The Board based its denial of asylum and withholding solely on Sanchez-Castro's failure to satisfy the nexus requirement. She invoked the protected ground of "membership in a particular social group" and argued that she was persecuted and feared future persecution on that basis. 8 U.S.C. § 1158(b)(1)(B)(i). She defined her particular social group as a "[s]ingle family unit[] targeted by [Mara Salvatrucha] because the father is away living in the United States." The Board found that the record did not establish that Sanchez-Castro's family status was a central reason for the harm she suffered or feared that she would suffer.

Because the Board considered only the nexus requirement, we review only whether substantial evidence supports its finding that Sanchez-Castro did not satisfy that requirement. *See Donawa v. U.S. Att'y Gen.*, 735 F.3d 1275, 1279 (11th Cir. 2013). We do not consider whether Sanchez-Castro's experience rises to the

9

level of persecution, whether she has a well-founded fear of future persecution, or whether her family unit qualifies as a particular social group. *Cf. Perez-Sanchez*, 935 F.3d at 1158 n.7.

We conclude that substantial evidence supports the finding of the Board. The record does not compel a finding that any persecution that Sanchez-Castro suffered or fears occurred "because of" the status of her nuclear family. Several of her anecdotes are manifestly unrelated to her family status and instead establish that she and her family members have been the victims of ordinary criminal activity. *Cf. Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1258 (11th Cir. 2006). For example, Mara Salvatrucha did not try to kidnap Sanchez-Castro and her sister "because of" their family; indeed, it released her sister after it learned of their mother's previous payments. Nor did a gang member target Sanchez-Castro's brother "because of" his family; it targeted him because he wore clothing associated with a rival gang. The record likewise supports the inference that the gang engaged in sexual harassment and theft not because it sought to target Sanchez-Castro's family, but because the gang engages in that kind of behavior indiscriminately. *Cf. id.*

To the extent that the gang extorted Sanchez-Castro's mother by threatening her family, the record also supports the conclusion that this extortion was not "because of" her family specifically. Like the Board, we distinguish persecution of

10

a family as a means to an unrelated end from persecution based on animus against a family *per se*. *Matter of L-E-A-*, 27 I. & N. Dec. at 44–46. Where a gang targets a family only as a means to another end, the gang is not acting because of who the family is; the identity of the family is only incidentally relevant. *Id.*; *cf. INS v. Elias-Zacarias*, 502 U.S. 478, 483 (1992), *superseded by statute on other grounds*, 8 U.S.C. § 1252(b)(4)(B). So Sanchez-Castro cannot satisfy the nexus requirement if Mara Salvatrucha was motivated, at bottom, by a desire "to raise funds." *See Rivera v. U.S. Att'y Gen.*, 487 F.3d 815, 823 (11th Cir. 2007). When a family is targeted because its wealth makes it an "obvious target[] for extortionate demands," that motivation does not constitute extortion "*because* of family relationships." *Cambara-Cambara v. Lynch*, 837 F.3d 822, 826 (8th Cir. 2016). So it goes here: Sanchez-Castro admitted to the Board that the gang extorted her mother "to get money."

Sanchez-Castro's admission that the gang had a generic pecuniary motive distinguishes her case from *Perez-Sanchez*, where we held that an applicant for asylum and withholding satisfied the nexus requirement. 935 F.3d at 1158–59. In *Perez-Sanchez*, the record was "replete with evidence" that a cartel extorted the applicant "*because* of his father-in-law's past history with the cartel," so it was "impossible to disentangle" the extortion from the cartel's grievance against the

11

father-in-law. *Id.* at 1158. By contrast, nothing in the record here suggests that Mara Salvatrucha harbored animus against the Sanchez-Castro family *per se*.

In evaluating the issue of extortion, we reject Sanchez-Castro's invitation to follow the approach of the Fourth Circuit. The Fourth Circuit takes a more lenient approach to the nexus requirement than we do. For example, in *Hernandez-Avalos v. Lynch*, it concluded that a gang persecuted a mother "on account of her membership in her nuclear family" when it threatened to kill her unless she would allow her son to join the gang. 784 F.3d 944, 950 (4th Cir. 2015) (internal quotation marks omitted). Although the threat was a means to the end of recruiting her son into the gang, the Fourth Circuit reasoned that "Hernandez's relationship to her son [was] why she, and not another person, was threatened." *Id.* We decline to follow this reasoning because it expands the nexus inquiry to include family status as a central reason even when it is "incidental" and "subordinate to another reason for harm." *Parussimova*, 555 F.3d at 741 (internal quotation marks omitted); *see also Orellana-Recinos v. Garland*, 993 F.3d 851, 858–59 (10th Cir. 2021).

Moreover, the harm identified by Sanchez-Castro is not unique to her particular social group. Although she defined her particular social group in terms of her nuclear family, she provided evidence that relatives outside her nuclear family suffered in the same ways or worse. And she submitted country reports suggesting that the criminality she experienced before and fears experiencing again

12

is widespread in El Salvador. Evidence that treatment is consistent with general criminal activity does not help Sanchez-Castro with the nexus requirement. *Cf. Ruiz*, 440 F.3d at 1258.

Taken together, the record does not compel the conclusion that Sanchez-Castro's nuclear family was a central reason for any persecution she suffered or that she fears. Instead, substantial evidence supports the conclusion that the harm that she identifies is "nothing more than a manifestation of the general extortion and gang violence that plagues El Salvador." *Velasquez v. Sessions*, 866 F.3d 188, 199 (4th Cir. 2017) (Wilkinson, J., concurring). So we agree with the Board that Sanchez-Castro is ineligible for asylum or withholding of removal.

### B. Substantial Evidence Supports the Finding that Sanchez-Castro Has Failed to Satisfy the Government-Acquiescence Requirement for Protection Under the Convention Against Torture.

To be eligible for protection under the Convention Against Torture, an applicant must establish that it is "more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). Torture involves, among other elements, "an[] act by which severe pain or suffering . . . is inflicted by or at the instigation of or with the consent or acquiescence of" a government official or other person acting in an official capacity. *Id.* § 208.18(a)(1). A government official acquiesces to torture only if, "prior to the activity constituting torture, [he] ha[s] awareness of such activity and

13

thereafter breach[es] his . . . legal responsibility to intervene to prevent" the activity. *Id.* § 208.18(a)(7).

Substantial evidence supports the conclusion of the Board that Sanchez-Castro is ineligible for protection under the Convention Against Torture. *See Fahim v. U.S. Att'y Gen.*, 278 F.3d 1216, 1218 (11th Cir. 2002). In particular, she has failed to establish any likelihood that she will suffer harm "inflicted by or at the instigation of or with the consent or acquiescence of" a government official. 8 C.F.R. § 208.18(a)(1). She has not asserted that she will suffer harm "inflicted by" or "at the instigation of" a government official, so her feared harm at the hands of Mara Salvatrucha can qualify only if it comes "with the consent or acquiescence of" a government official. *Id.* But the record makes clear that the government of El Salvador is fighting Mara Salvatrucha. True, Sanchez-Castro testified that the police never arrived when her family called for them. But she also testified that the gang recruited spotters to warn them when the police were on the way and that gang members would run away before the police could arrive. If Mara Salvatrucha had the acquiescence of the police, then it would not need spotters. And even if Sanchez-Castro were right that the police are not effective at controlling Mara Salvatrucha, it is dispositive that they are trying to do so. *Cf. Zaldana Menijar v. Lynch*, 812 F.3d 491, 502 (6th Cir. 2015) ("That the Salvadoran government is unable to control the gangs does not constitute acquiescence."); *Reyes-Sanchez v.*

14

*U.S. Att'y Gen.*, 369 F.3d 1239, 1243 (11th Cir. 2004) ("That the police did not catch the culprits does not mean that they acquiesced in the harm.").

## IV. CONCLUSION

We **DENY** the petition for review.