[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-14064

Non-Argument Calendar

_____

MARIA EMMA SALMERON-HERNANDEZ,
CARLOS DAVID SALMERON-HERNANDEZ,
ELVIN AARON SALMERON-HERNANDEZ,

Petitioners,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A209-082-694

_____

Before ROSENBAUM, BRASHER, and HULL, Circuit Judges.

PER CURIAM:

Maria Salmeron-Hernandez and her two children,[1] through counsel, seek review of the Board of Immigration Appeals's ("BIA") final order affirming the Immigration Judge's ("IJ") denial of their application for asylum.  On appeal, Salmeron-Hernandez argues that the BIA erred by finding: (1) death threats made against her by an international criminal gang, Mara Salvatrucha-13 ("MS-13"), did not amount to persecution; and (2) no nexus existed between the death threats against her and a protected ground.  After review, we deny the petition for review.

## I.    BACKGROUND

### A.  Removability

In 2016, Salmeron-Hernandez, a native and citizen of El Salvador, entered the United States without valid entry documents and without inspection.  She was accompanied by her two minor children, Carlos and Elvin, who are also natives and citizens of El Salvador.

---

[1] Although the agency assigned separate application numbers to Salmeron-Hernandez's two children, Carlos and Elvin, and they are listed as separate petitioners now before us, she listed them as derivative applicants on her application.

The Department of Homeland Security ("DHS") charged Salmeron-Hernandez and her children with removability under, *inter alia*, INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i) for being a noncitizen present in the United States without being admitted or paroled. Salmeron-Hernandez conceded removability under that provision.

In April 2017, Salmeron-Hernandez applied for asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT").[2] Salmeron-Hernandez claimed that she suffered past persecution and feared future persecution on account of two protected grounds: (1) her membership in two particular social groups, namely her familial relationship with her son and her status as a single woman perceived not to have protection; and (2) her anti-gang political opinion.

### B. Persecution Evidence

According to Salmeron-Hernandez's application and her testimony at her removal hearing, her son was approached by a classmate multiple times in April 2016 about joining MS-13, offering him a gun and $200. On April 15, 2016, the classmate told

---

[2] Salmeron-Hernandez's petition in this Court does not challenge the denial of withholding of removal or CAT relief, so she has abandoned those issues. *See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

Salmeron-Hernandez's son that MS-13 would kill his mother if he did not join the gang.

Three days later, a friend told Salmeron-Hernandez that MS-13 posted a photograph of her on Facebook, claiming that the gang would kill her if she did not join. Shortly thereafter, Salmeron-Hernandez received a message from MS-13 stating that the gang would kill her if she did not join.

At her removal hearing, Salmeron-Hernandez explained that MS-13 targeted her because she was a single mother who could not defend herself. She testified that her son was asked by his classmate on April 18, 2016, to confirm that she was single.

Further, Salmeron-Hernandez explained that she did not report the threats to the police because the police were "aligned" with the gang. As such, she believed she would be killed if she returned to El Salvador. However, Salmeron-Hernandez did admit that she had not experienced any physical harm in El Salvador, and that her parents and brother—with whom she and her children lived when in El Salvador—still lived in El Salvador and had not been threatened, harmed, or visited by the gang members.

In support of her application, Salmeron-Hernandez attached affidavits from her father, her sister, and a friend. The affidavits confirmed that Salmeron-Hernandez and her son had been threatened by MS-13. Salmeron-Hernandez's friend added that people who did not collaborate with the gangs died.

Salmeron-Hernandez also included various reports and articles describing the gang violence against women in El Salvador. The 2016 United States Department of State Country Report on Human Rights Practices in El Salvador stated that there was "widespread corruption," "weak rule of law," and gang violence against women and girls in El Salvador. Similarly, a 2016 Immigration and Refugee Board of Canada report on El Salvador stated that women were considered "property" of gang members, and they could not say "no" to a gang member without being killed.

## C. IJ and BIA Decisions

The IJ issued an oral decision denying relief and ordering that Salmeron-Hernandez be removed to El Salvador. The IJ found Salmeron-Hernandez credible but determined that she was statutorily ineligible for asylum because: (1) she was never physically harmed and thus did not show that she was the victim of past persecution; and (2) there was no nexus between the gang's death threats and her membership in a protected group.

The IJ found that gang members targeted Salmeron-Hernandez and her son because they wanted them to join MS-13, not because of their familial relationship. There was also not enough evidence to find that Salmeron-Hernandez was targeted because she was a single mother perceived not to have protection. Indeed, the IJ pointed out that Salmeron-Hernandez actually lived with her father and brother. Next, the IJ determined that MS-13's threats were not on account of a perceived political opinion

6                    Opinion of the Court                    21-14064

because Salmeron-Hernandez's mere refusal to join the gang was not a valid political opinion.  As to future persecution, the IJ found that Salmeron-Hernandez: (1) did not establish that local authorities were unwilling or unable to protect her because she did not report any of the incidents to the police; and (2) did not establish why she could not relocate within El Salvador based solely on a picture published online three years ago.

The BIA dismissed Salmeron-Hernandez's appeal, finding: (1) no clear error in the IJ's factual findings; (2) the IJ correctly concluded that the threats to Salmeron-Hernandez did not amount to persecution; and (3) the IJ did not clearly err in finding no nexus between the harm and a protected ground.  The BIA did not reach Salmeron-Hernandez's arguments as to the Salvadoran government's ability to control the gangs or relocation because it found the nexus issue dispositive.

## II.    DISCUSSION

### A.  Past Persecution

Before this Court, Salmeron-Hernandez argues that the BIA erred by finding that MS-13's death threats did not amount to persecution.[3]

---

[3] Where, as here, the BIA issued its own decision agreeing with the IJ's decision and adopting aspects of the IJ's reasoning, we review both the IJ's and the BIA's decisions.  *See Ayala v. U.S. Att'y Gen.*, 605 F.3d 941, 948 (11th Cir. 2010).  We review factual determinations regarding eligibility for asylum under the "highly deferential" substantial evidence test, which requires that

21-14064                Opinion of the Court                7

To establish eligibility for asylum, the applicant must show either past persecution or a well-founded fear of future persecution based on race, religion, nationality, membership in a particular social group, or political opinion.  INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A); *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1257 (11th Cir. 2006).

This Court has recognized that "[p]ersecution is an 'extreme concept' requiring evidence of 'more than a few isolated incidents of verbal harassment or intimidation.'"  *Martinez v. U.S. Att'y Gen.*, 992 F.3d 1283, 1291 (11th Cir. 2021) (quoting *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1231 (11th Cir. 2005)).  When reviewing evidence of persecution, "we must consider the cumulative effect of the allegedly persecutory incidents."  *Id.* (quotation marks omitted).

This Court has held that death threats alone do not necessarily compel a finding of persecution.  *See Sepulveda*, 401 F.3d at 1229, 1231 (concluding there was no persecution where the applicant received menacing death threats from a guerilla group both at home and at work).  This Court has also held that an asylum applicant did not show persecution where there were death threats accompanied by brief detentions and minor physical attacks.  *See Martinez*, 992 F.3d at 1291–93 (holding that an applicant's

---

we affirm the IJ's and BIA's decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole."  *Id.* (quotation marks omitted).  We review *de novo* any legal determinations.  *Id.*

treatment did not compel a finding of past persecution when he was detained multiple times, beaten by two plain-clothes officers that left him unconscious, and had death and torture threats made against him).

Here, while MS-13 made multiple death threats against Salmeron-Hernandez—including posting her photograph on Facebook and sending her a note—she was never detained or physically harmed.   Nor was there any evidence that MS-13 attempted to carry out its threats.  Under our precedent, substantial evidence supports the finding that her past treatment did not rise to the level of persecution, and we cannot say that the evidence compels a finding to the contrary.[4]

## B.  Nexus

A noncitizen seeking asylum must prove that she suffered persecution or has a well-founded fear of persecution on account of a protected ground.  *See Perez-Zenteno v. U.S. Att'y Gen.*, 913 F.3d 1301, 1307 (11th Cir. 2019).  To satisfy the nexus requirement, an applicant must establish that the protected ground was or will be "at least one central reason" for her persecution.  *Id.* (quoting INA § 208(b)(1)(B)(i), 8 U.S.C. § 1158(b)(1)(B)(i)).  The protected ground "cannot be incidental, tangential, superficial, or subordinate to another reason for harm."  *Sanchez-Castro v. U.S.*

---

[4] Although Salmeron-Hernandez cites a Ninth Circuit decision to support her argument that death threats alone amount to persecution, we must follow our own circuit precedent.

*Att'y Gen.*, 998 F.3d 1281, 1286 (11th Cir. 2021) (quotation marks omitted).

Salmeron-Hernandez relied on two protected grounds—her membership in particular social groups and her anti-gang political opinion. She claimed she was a member of two social groups because of her familial relationship with her son and her status as a single woman perceived not to have protection.[5] The IJ and the BIA did not address whether either of the proposed groups qualified as a particular social group. Therefore, we assume for the purposes of this petition that both groups qualify as particular social groups without resolving the issue.

As to her first social group, her familial relationship with her son, *Sanchez-Castro* is instructive. In that case, Sanchez-Castro applied for asylum, arguing that MS-13 targeted her family in El Salvador because her father lived in the United States, and the gang assumed her family had money. *Sanchez-Castro*, 998 F.3d at 1283–84. Sanchez-Castro was subjected to death threats, attempted kidnapping, sexual harassment, and theft. *Id.* at 1284. This Court concluded that substantial evidence supported the finding that Sanchez-Castro failed to establish a nexus between the relationship with her family and her persecution because her family was not "a central reason for any persecution she suffered." *Id.* at 1285–88.

---

[5] Salmeron-Hernandez also argued to the IJ that MS-13 targeted her because her son was a student, but she has abandoned that particular social group claim by not raising it on appeal. *See Sepulveda*, 401 F.3d at 1228 n.2.

"Where a gang targets a family only as a means to another end, the gang is not acting because of who the family is; the identity of the family is only incidentally relevant." *Id.* at 1287. Thus, this Court held that Sanchez-Castro was targeted by MS-13 because of a "generic pecuniary motive" and "general criminal activity." *Id.* at 1287–88.

On the other hand, in *Perez-Sanchez*, on which Salmeron-Hernandez relies, the applicant, Perez-Sanchez, was threatened, beaten, and extorted because his father-in-law owed money to the Gulf Cartel in Mexico. *Perez-Sanchez v. U.S. Att'y Gen.*, 935 F.3d 1148, 1150–51 (11th Cir. 2019). Because it was "impossible to disentangle [Perez-Sanchez's] relationship to his father-in-law from the Gulf Cartel's pecuniary motives," and he was extorted "*because* of his father-in-law's past history with the cartel," this Court concluded that Perez-Sanchez's familial relationship was a "central reason" for the harm, thus satisfying the nexus requirement. *Id.* at 1158–59.

Here, Salmeron-Hernandez cannot establish the required nexus because her evidence does not show that her relationship with her son was a "central," rather than "tangential," reason for MS-13's threats.[6]    Salmeron-Hernandez's own testimony

---

[6] Salmeron-Hernandez argues that *Matter of A-B-*, 28 I. & N. Dec. 307 (U.S. Att'y Gen. 2021) overturned the proposition that "persecution must somehow be motivated by the victim's membership in a social group." Nothing in *Matter of A-B-* disturbed the statutory requirement—nor our precedent interpreting that requirement—that a protected ground must be "at least one central,"

establishes that MS-13's only goal was to recruit her and her son into their criminal enterprise. MS-13 used that mother-son relationship to coerce them to join the gang, but the gang did not specifically target Salmeron-Hernandez and her son because of their family relationship. This is distinguishable from *Perez-Sanchez*, where the applicant was targeted *because* of his father-in-law's debt to the Gulf Cartel. Instead, like in *Sanchez-Castro*, MS-13's actions were motivated by general recruitment efforts, and Salmeron-Hernadez's relationship with her son was only incidental to those efforts.

As to her second social group, Salmeron-Hernandez's status as single mother perceived not to have protection, substantial evidence supports the finding of the IJ and the BIA that Salmeron-Hernandez was a victim of MS-13's general recruitment efforts. The evidence shows that Salmeron-Hernandez and her son were first threatened by the gang members on April 15, 2016, and it was not until three days later that a gang member asked Salmeron-Hernandez's son to confirm that she was a single mother. Thus, her status as a single mother was incidental to the recruitment efforts. Further, while the reports attached to Salmeron-Hernandez's petition speak of high levels of violence against women, general lawlessness or discrimination as described in a country report does not compel a finding that an applicant was or

---

and not merely a "tangential" or "incidental," reason for the threatened harm. *See Sanchez-Castro*, 998 F.3d at 1286.

12                   Opinion of the Court                   21-14064

will be targeted based on a protected ground. *See Mazariegos v. U.S. Att'y Gen.*, 241 F.3d 1320, 1328 (11th Cir. 2001) (noting that eligibility for asylum is not extended "to anyone who fears the general danger that inevitably accompanies political ferment and factional strife" (quotation marks omitted)).

As to political opinion, this Court has held that "it is not enough to show that the alien was or will be persecuted or tortured due to the alien's refusal to cooperate with the guerillas." *Rodriguez Morales v. U.S. Att'y Gen.*, 488 F.3d 884, 890 (11th Cir. 2007) (alterations adopted). For example, in *Sanchez v. United States Attorney General*, this Court concluded that an applicant for withholding of removal did not establish a nexus between her political opinion and the guerilla group's alleged persecution after she refused to cooperate with the group because the harassment was due to her refusal rather than to any actual or imputed political opinion she held. 392 F.3d 434, 438 (11th Cir. 2004).

Salmeron-Hernandez's evidence does not compel a conclusion that she was targeted for her actual or imputed political opinion. Other than her apparent refusal to join the gang, she provides no evidence that she held anti-gang beliefs. In any event, MS-13 attempted to force her and her son to join the gang as part of general recruitment efforts, not because the gang perceived her as holding anti-gang political opinions.[7]

---

[7] Salmeron-Hernandez's petition contends that the IJ improperly determined that she could relocate safely within El Salvador. However, the BIA found it

## III.    CONCLUSION

Because substantial evidence supports the IJ's and BIA's findings that Salmeron-Hernandez did not establish past persecution and that there was no nexus between MS-13's death threats and any statutorily protected ground, we deny Salmeron-Hernandez's petition.

**PETITION DENIED.**

---

unnecessary to reach this ruling by the IJ because it found the nexus issue dispositive.  Therefore, we have no occasion to consider Salmeron-Hernandez's argument about relocation.