[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-13108

Non-Argument Calendar

_____

YELSON ARMAND RODRIGUEZ,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A206-801-904

_____

Before WILSON, JILL PRYOR, and BRANCH, Circuit Judges.

PER CURIAM:

Yelson Rodriguez, a Honduran national proceeding with counsel, seeks review of the Board of Immigration Appeals' (BIA) final order affirming the Immigration Judge's (IJ) denial of his application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT). He argues that the BIA erred by affirming the IJ's determination that his proposed particular social group (PSG) lacked immutability and that substantial evidence does not support the determination that he failed to establish a nexus between that group and his asserted persecution. Consequently, he contends that the BIA erred by affirming the IJ's determination that he failed to establish eligibility for asylum. Next, he asserts that substantial evidence does not support the BIA's determination that he failed to establish eligibility for withholding of removal. Finally, he argues that the BIA erred by affirming the IJ's denial of CAT relief. After careful review, we deny Rodriguez's petition for review in part and dismiss his petition in part.

## I.     BACKGROUND

Rodriguez is a citizen of Honduras. The Department of Homeland Security served him with a Notice to Appear, charging that he was removable under 8 U.S.C. § 1182(a)(6)(A)(i) for

entering the United States as an undocumented immigrant without being admitted or paroled.  Rodriguez conceded removability as charged.

Rodriguez applied for asylum, withholding of removal, and CAT relief.  He asserted that strangers killed his brother in the butcher shop he owned.  Afterwards, he stated, he and his family received death threats, and he was told that the strangers would kill him if he did not leave.  He contended that police in Honduras were corrupt and did not offer any protection to citizens, and that he feared that he could be killed like his brother.

Rodriguez submitted exhibits in support of his application. An article stated that his brother had been killed at the butcher shop he owned by two unknown people and quoted an acquaintance as stating that the crime could have been perpetrated due to a feud or personal envy.  In a written statement, Rodriguez asserted that he witnessed the death of his brother and had to abandon his job due to criminals sending him death threats and looking for him because he was a witness and the brother of the deceased.  His aunt stated in a sworn declaration that her and Rodriguez's family had been persecuted since they owned a prosperous butcher shop and that men threatened to murder the family members who worked at the shop, resulting in the death of her son.  His uncle stated in a sworn declaration that their family was being persecuted due to envy.

Additionally, Rodriguez submitted the 2013, 2016, and 2017 Honduras Human Rights Reports, which indicated that some police officers participated in organized crime, and that organized

criminal groups committed violent crimes, murder, and torture against the business community. And a State Department travel warning stated that crime and violence were critically high in Honduras and criminals operated with impunity throughout the country. Among other evidence, Rodriguez also submitted invoices, birth and death certificates for his brother and cousin, an article stating that his cousin had been shot, and several other affidavits stating that he had left Honduras due to death threats.

Rodriguez testified during the merits hearing, expounding on the death of his brother and cousin, the threats he and his family continued to receive following their deaths, the harassment that the mother of Rodriguez's children experienced after he fled to the United States, and his beliefs as to why he and his family had been targeted. Specifically, Rodriguez testified that the men had harmed his family because he and his brother ran a profitable butcher shop. He believed that his family members were harmed or threatened because they were successful businesspeople. Rodriguez argued that he belonged to a PSG consisting of members of the Rodriguez family that worked at the butcher shop. He further contended that the lack of protection from the police was akin to acquiescence.

The IJ denied Rodriguez's application in an oral decision and made the following findings. The IJ determined that almost all of Rodriguez's testimony was credible, but that he did not show past persecution or an objectively reasonable fear of future persecution. Rodriguez's proposed PSG was lacking in social distinction and particularity and was not immutable because his family members

were not forced to be butchers. Rodriguez also did not meet his burden of demonstrating that his family was a central reason for the harm; instead, the harm appeared to result from the success of the business, envy, anger, or a personal dispute. The IJ further found that Rodriguez did not contact the police and did not establish that they were unwilling or unable to protect him, Rodriguez's case involved private criminal activity, and Rodriguez did not establish that he could not relocate. Accordingly, because he was unable to show eligibility for asylum, Rodriguez was not eligible for withholding of removal. Nor did Rodriguez establish that the Honduran government would torture him or acquiesce in his torture in order to establish his eligibility for CAT relief.

Rodriguez appealed the denial of his application to the BIA. On appeal, Rodriguez argued that he qualified as a refugee because he credibly testified and submitted evidence establishing that he suffered past persecution by the men who killed his brother and cousin because he was a member of his family who worked at the butcher shop and he had a well-founded fear of future persecution. He contended that he had established a valid PSG. Concerning CAT relief, Rodriguez provided law on CAT claims and stated that the issues on appeal included whether the IJ erred in concluding that he failed to meet the requirements for CAT relief. He did not, however, provide any argument supporting his claim for CAT relief.

In dismissing Rodriguez's appeal, the BIA did not explicitly adopt the IJ's reasoning, and instead made the following

determinations. Rodriguez had not established eligibility for asylum. His PSG lacked immutability and, even if he had asserted a valid PSG, he failed to establish that his membership in the group was a central reason for his persecution. The IJ did not clearly err by determining that his attackers were motivated by the success of his business and envy, anger, or a personal dispute. Further, the acts Rodriguez asserted were consistent with acts of private violence and merely showed that he was a victim of crime. And because he did not meet the standard for asylum, he was not entitled to withholding of removal. Rodriguez had not demonstrated that he would more likely than not be tortured upon removal to Honduras, and there was insufficient evidence that his persecutors acted with the requisite degree of state support or acquiescence. Rodriguez timely appealed the BIA's decision.

## II.    STANDARDS OF REVIEW

We solely review the BIA's decision unless the BIA expressly adopts the IJ's decision or relies upon its reasoning, in which case we review the adopted or relied-upon portions of the IJ's opinion and any part of the BIA decision where the BIA rendered its own opinion. *Tang v. U.S. Att'y Gen.*, 578 F.3d 1270, 1275 (11th Cir. 2009). In deciding whether to uphold a BIA opinion, we are limited to the grounds upon which it relied. *See NLRB v. U.S. Postal Serv.*, 526 F.3d 729, 732 n.2 (11th Cir. 2008) (per curiam).

We review legal conclusions, including whether a proposed group constitutes a particular social group, de novo and factual

findings for substantial evidence. *Perez-Zenteno v. U.S. Att'y Gen.*, 913 F.3d 1301, 1306 (11th Cir. 2019). Under the substantial evidence standard, we view the evidence in the light most favorable to the agency's decision, draw all reasonable inferences in favor of that decision, and must affirm the BIA's decision unless the evidence compels a contrary finding. *Id.*

## III.    DISCUSSION

### A. Substantial Evidence Supports the Finding that Rodriguez Failed to Satisfy the Nexus Requirement for Asylum and Withholding of Removal

The Attorney General may grant asylum to a non-citizen who meets the Immigration and Nationality Act's definition of a refugee. 8 U.S.C. § 1158(b)(1)(A). A refugee is a person who is (1) outside the country of his nationality, (2) unable and unwilling to return to that country, and (3) unable and unwilling to avail himself of its protection (4) because of persecution or a well-founded fear of persecution on account of his membership in a PSG. *Id.* § 1101(a)(42)(A). To qualify as a PSG, a group must (1) be defined with particularity, (2) be socially distinct, and (3) share a common, immutable characteristic that either cannot change or should not be required to change because it is fundamental to the group members' identities. *Perez-Zenteno*, 913 F.3d at 1308–09.

Importantly, the standards for both asylum and withholding of removal "contain a causal element known as the nexus requirement." *Sanchez-Castro v. U.S. Att'y Gen.*, 998 F.3d 1281, 1286

(11th Cir. 2021).  To satisfy this requirement, "[a]n applicant must establish that a protected ground 'was or will be at least one central reason for persecuting the applicant.'" *Id.*  A central reason is one that "is 'essential' to the motivation of the persecutor." *Id.*  "In other words, the [PSG] cannot play a minor role in the [applicant's] past mistreatment or fears of future mistreatment.  That is, it cannot be incidental, tangential, superficial, or subordinate to another reason for harm." *Id.* (internal quotation mark omitted).  Evidence that merely shows that a person has been the victim of crime or private violence does not establish persecution based on a statutorily protected ground. *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1258 (11th Cir. 2006) (per curiam).

Here, assuming for the sake of argument that Rodriguez asserted a valid PSG of Rodriguez family members who work at the butcher shop, substantial evidence supports the BIA's determination that Rodriguez failed to show a nexus between that PSG and his persecution.  The evidence presented by Rodriguez supports the BIA's conclusion that the harm Rodriguez suffered was due to the success of his business and envy, anger, or a personal dispute, and that he had merely been a victim of crime or private violence.  For example, Rodriguez's aunt submitted a sworn statement in which she claimed that their family was targeted because of their successful business, and Rodriguez's uncle's statement reflected his belief that those who harmed the family were motivated by envy.  Substantial evidence in the form of testimony and other evidence

thus supports the finding that the Rodriguez family suffered harm because they owned and operated a successful business.

We analyzed the nexus requirement in relation to a family-based PSG in *Sanchez-Castro v. United States Attorney General*, 998 F.3d at 1283–84. There, an El Salvador native petitioned for review of the denial of her asylum claim, in which she asserted that gang members targeted her family based on the assumption that her father's work in the United States made her family wealthy. *Id.* at 1283. We held that substantial evidence supported the finding that she did not meet the nexus requirement because the gang targeted her family in order to obtain funds, not because of any animus against her family. *Id.* at 1283, 1285–87. In doing so, we distinguished persecution of a family *because of* membership in the family from persecution of a family for some other, tangential reason: "[W]e distinguish persecution of a family as a means to an unrelated end from persecution based on animus against a family *per se*. Where a gang targets a family only as a means to an end, the gang is not acting because of who that family is; the identity of the family is only incidentally relevant." *Id.* at 1287 (internal citation omitted).

As in *Sanchez-Castro*, the record here does not compel a finding that any persecution Rodriguez has suffered or fears is "because of" his familial ties. Substantial evidence therefore supports the BIA's no-nexus determination. And, because this no-nexus finding is dispositive of both of his asylum and withholding of removal claims, we agree with the BIA that Rodriguez is ineligible

for either form of relief. *See id.* at 1286 ("[A]n applicant who is ineligible for asylum is necessarily ineligible for withholding of removal.").

### B. Rodriguez Failed to Exhaust His Claim for CAT Relief

We review questions of our subject matter jurisdiction de novo. *Jeune v. U.S. Att'y Gen.*, 810 F.3d 792, 799 (11th Cir. 2016). If a petitioner fails to assert an issue before the BIA by not raising the core issue or the discrete arguments he advances on appeal, he has failed to exhaust his administrative remedies, and we lack jurisdiction to review the unexhausted issue even if the BIA addressed the question sua sponte. *Id.* at 800; *Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250–51 (11th Cir. 2006) (per curiam). While a petitioner need not use precise legal terminology, conclusory statements or mere passing references do not satisfy this requirement. *Jeune*, 810 F.3d at 800. We are obligated to sua sponte raise our lack of jurisdiction. *See Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999).

Here, while Rodriguez stated the applicable law for CAT relief, he did not put forth any arguments as to why he should be entitled to such relief and thus failed to exhaust his CAT relief argument below. *See Jeune*, 810 F.3d at 800 ("[T]o exhaust a claim before the BIA, it is not enough that the petitioner has merely identified an issue to that body."). We therefore dismiss Rodriguez's petition solely as to this issue.

**DENIED IN PART; DISMISSED IN PART.**