[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-10012

Non-Argument Calendar

_____

TANIA NOHEMY PAZ-MEZA,
MARIO EMILIO RODRIGUEZ-PAZ,

                                                                Petitioners,

*versus*

U.S. ATTORNEY GENERAL,

                                                                Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A202-001-038

_____

Before WILSON, ROSENBAUM, and ANDERSON, Circuit Judges.

PER CURIAM:

Tania Paz-Meza fled Honduras for the United States in 2014 after several close family members were killed and her brother, a police officer in Honduras for several years, was shot. She applied for asylum and withholding of removal, asserting that she and her family were being targeted by narcotraffickers for their connection to her brother, who ultimately was killed in 2017, and his police activities. The Board of Immigration Appeals ("BIA"), affirming the decision of an immigration judge ("IJ"), found that she was ineligible for asylum and withholding because she failed to establish a "nexus" between the killings and a statutorily protected ground. In the BIA's view, Paz-Meza's belief that the killings were all traceable to her brother and his police work was too speculative to support relief. She now petitions this Court for review. We now grant her petition.

## I.

Tania[1], a native and citizen of Honduras, arrived in the United States in July 2014 with her minor son (then three years old). Soon after, the government began proceedings to remove them for entering without authorization. She retained counsel and

---

[1] Because Tania and her siblings share the same last name, we use their first names for clarity.

filed an application for asylum and withholding of removal on behalf of herself and her son, asserting that she and her family had been targeted for murder by narcotraffickers due to their connection to her brother Pedro, who had been a police officer in Honduras.

In support of her application, Tania submitted a sworn statement from Pedro, and she and her sister Alba testified at the merits hearing. This evidence reflected that Pedro worked for the Honduran National Police from 2004 to 2007. He worked in part on investigations involving the trafficking of drugs and goods, which led to high penalties for some offenders.

In 2006, Pedro began receiving death threats to himself and his family based on his police work. He requested but was denied police protection not only for himself but also for his family. He also sought reassignment. As a result of the threats, Tania's mother left Honduras for Spain in October 2006, but her father refused to leave. Not long after, in December 2006, he was killed. The murder was not investigated. When Tania and Alba visited the prosecutor's office to obtain information about their father's murder, they were told that the file was closed.

After their father was killed, Pedro told his sister Alba that the police force was corrupt, that "he was getting threats," and that the murder was likely connected to his work, but he did not discuss details. Alba acknowledged in her testimony that she did not know why their father was killed.

Because of the threats against him, Pedro resigned from the police force in February 2007 and went into hiding. Thereafter, he occasionally stayed with his uncle or his half-brother. After he resigned, Pedro assisted in police investigations of criminal gangs, including an investigation into the kidnapping and eventual murder of an American citizen, which led to Pedro's receipt of repeated threats from anonymous callers that his "family would pay" if they could not find him.

The uncle of Tania, Pedro, and Alba (with whom Pedro had occasionally stayed while he was hiding from the threats against him for his police work) was killed in 2012, and their half-brother (with whom he had also occasionally stayed while hiding) was killed in 2013. Pedro also suffered two gunshot wounds during an attack in 2013. Shortly before their half-brother was killed, in 2013, Tania received a phone call threatening that if she did not leave, she was "going to end up paying what they couldn't do at that time [to her] brother." During the call, the caller referred to Tania and Pedro by name.

Pedro began applying for political asylum in Mexico because the threats to him and his family continued, as no investigation into or arrests for the murders of his father and half-brother had occurred. Ultimately, Pedro was killed in 2017.

Tania and Alba believed that the attacks against Pedro were motivated by his police work, and that their family members were targeted based on their connection with Pedro. In particular, Tania believed that her uncle and half-brother were targeted by "the

people that were looking for [Pedro]," because they had housed him after he resigned from the police. She identified those people as "[m]embers of organized crime" and "drug dealers." No one was ever apprehended for the killings, and no one claimed responsibility. Tania acknowledged that Honduras is a violent country.

The immigration judge rendered an oral decision finding that Tania did not meet her burden to establish eligibility for asylum. The IJ found that Tania's proposed social groups—"family members of former law enforcement officers" and "family members of Pedro Rigoberto Paz-Meza"—were cognizable under BIA precedent at the time, that she and her sister testified credibly, and that she provided reasonably available corroborating evidence.

But in the IJ's view, Tania's evidence was insufficient to establish the required nexus or connection between the particular social groups and the alleged persecution. The IJ explained that the REAL ID Act required Tania to show that the protected ground was "at least one central reason" for the persecution, which meant that it was "a primary or essential part of the persecutor's motivation." The IJ found that neither Tania nor her sister could "establish the identity of the people that were responsible for the murders . . . of their family members or the reason for the persecution," which was "fatal" to her asylum claim. The IJ noted that Honduras is a violent country and that asylum law "does not provide refuge to every person fleeing dangerous conditions in their country."

Tania appealed to the BIA, which affirmed the IJ's decision. The BIA found that the IJ's nexus finding was not clearly erroneous

because "the identity of the individual who killed her family members" and the "motive for the murders" "remain[] unknown." The BIA described Tania's belief that narcotraffickers committed the murders due to Pedro's police work as "speculation" that was insufficient to meet her burden of proof.

## II.

We review the decision of the BIA only, except to the extent that the BIA expressly adopts or explicitly agrees with the IJ's opinion. *Ayala v. U.S. Att'y Gen.*, 605 F.3d 941, 947–48 (11th Cir. 2010). "We therefore review the IJ's opinion, to the extent that the BIA found that the IJ's reasons were supported by the record, and we review the BIA's decision, with regard to those matters on which it rendered its own opinion and reasoning." *Seck v. U.S. Att'y Gen.*, 663 F.3d 1356, 1364 (11th Cir. 2011) (quotation marks omitted).

We review the agency's factual findings for substantial evidence and its conclusions of law *de novo*. *Silva v. U.S. Att'y Gen.*, 448 F.3d 1229, 1236 (11th Cir. 2006). Review for substantial evidence is deferential and is based on a construction of the record evidence that is most favorable to the agency's decision. *Id.* We must affirm the agency decision "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* (quotation marks omitted). Findings of fact may be reversed only if the record compels a different result. *Id.*; *see also Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1230 (11th Cir. 2005).

We determine eligibility for asylum and withholding of re-moval based on similar standards. *Sanchez-Castro v. U.S. Att'y Gen.*, 998 F.3d 1281, 1286 (11th Cir. 2021). As relevant here, "[b]oth standards contain a causal element known as the nexus require-ment." *Id.* The applicant must establish that a protected ground—race, religion, nationality, membership in a particular social group, or political opinion—"was or will be at least one central reason for persecuting the applicant." *Id.* (quoting 8 U.S.C. § 1158(b)(1)(B)(i)). "A reason is central if it is 'essential' to the motivation of the perse-cutor." *Id.* We will not reverse a finding that an applicant failed to demonstrate a nexus if the finding is supported by substantial evi-dence. *Id.*; *Rodriguez Morales v. U.S. Att'y Gen.*, 488 F.3d 884, 890 (11th Cir. 2007).

In this case, the BIA based its denial of asylum and withhold-ing solely on Tania's failure to establish the nexus requirement be-tween the particular social groups of "family members of former law enforcement officers" and "family members of Pedro Rigoberto Paz-Meza" and the persecution of Tania and her family members. To review, Tania's evidence indicated the following: (a) Tania's family did not begin having security problems until after Pedro joined the police force; (b) after that happened, Tania's fa-ther, uncle, half-brother, and brother Pedro were all murdered; (c) her brother left the police force due to death threats against him and his family; (d) her uncle and half-brother who were killed had housed Pedro after he went into hiding because of the death threats against him for his police work; (e) Pedro received death threats

around the time of the murders of the uncle and half-brother; (f) Tania herself received a call threatening that she was "going to end up paying what they couldn't do at that time [to her] brother" shortly before her half-brother was killed in 2013; (g) the police in Honduras refused to investigate the murders; (h) after the murders of the uncle and half-brother, Pedro began applying for political asylum in Mexico because of the threats to him and his family based on his police work. In the BIA's view, the IJ's nexus determination was not clearly erroneous because this evidence did not establish the identities or motivations of the individuals who murdered her family members.

Based on the evidence submitted by Tania, we conclude that the BIA's determination that the murders were not linked to Pedro and his police work, and that Pedro's family members were not targeted because of the family relationship, is not "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Silva*, 448 F.3d at 1237. On the contrary, the evidence of record compels the conclusion that the persecution of Tania and her family were because of Pedro's police work.

The fact that Tania's family never had security problems before Pedro became a police officer, the timing of the violence against Pedro and his family members relative to Pedro's police work and the threats of violence stemming from it, the specific content of the threats of violence relating to Pedro's work, the refusal of the police to investigate the murders, and the fact that both of Pedro's relatives who helped him hide were murdered within a

year of other and of the shooting of Pedro paint a pretty overwhelming circumstantial case that Pedro and his relatives were murdered because of Pedro's police work, and Tania's life was threatened for the same reason.

To be sure, as the IJ noted, Tania could not "establish the identity of the people that were responsible for the murders . . . of their family members or [definitively establish] the reason for the persecution." But requiring Tania to show the identity of the murderers of her four relatives is an impossible standard (given that the police refused to investigate) and one that our law does not require. As for the reason for the persecution, the Supreme Court has explained that a petitioner need not show "direct proof of [her] persecutor['s] motives." *Immigr. & Naturalization Serv. v. Elias-Zacarias*, 502 U.S. 478, 483 (1992). Rather, she need show only "*some* evidence of it direct or circumstantial." *Id.* And where, as here, the BIA has concluded that the petitioner has not showed that the reason she asserts was the reason for the persecution, she must show that "the evidence [she] presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." *Id.* Though this is a high standard and we do not lightly find it satisfied, for the reasons we've discussed, we think this record compels that finding here. *Cf. Niftaliev v. U.S. Att'y Gen.*, 504 F.3d 1211, 1217 (11th Cir. 2007) ("We hold that the IJ erred when he found that the petitioner failed to establish past persecution. The BIA made the same mistake. The facts of this case compel such a finding. We are also troubled by the notion of condemning the

petitioner for failing to obtain some sort of documentation from the same government that persecuted and imprisoned him, concerning incidents that occurred approximately ten years ago.").

We therefore grant the petition for review, reverse the rulings of the BIA and IJ, and remand to the BIA to remand to the IJ for proceedings consistent with this opinion.

**PETITION GRANTED; MATTER REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**