**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 25-11196

Non-Argument Calendar

————————————

REYNA GUADALUPE OSORIO-VILLALOBOS,
BRIANA ESPERANZA QUINTANILLA OSORIO,
NAYDALIN FERNANDA GONZALEZ OSORIO,

*Petitioners,*

*versus*

U.S. ATTORNEY GENERAL,

*Respondent.*

————————————

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A201-518-993

————————————

Before LUCK, LAGOA, and MARCUS, Circuit Judges.

PER CURIAM:

Reyna Guadalupe Osorio-Villalobos and her two minor children seek review of the Board of Immigration Appeals' ("BIA") final order affirming the Immigration Judge's ("IJ") denial of her application for asylum and withholding of removal. On appeal, she argues that: (1) substantial evidence does not support the BIA's finding that she failed to show a nexus between her asserted persecution and a protected ground; and (2) the BIA incorrectly found that her two proffered particular social groups were not cognizable under the Immigration and Nationality Act ("INA") and that she withdrew her imputed political opinion ground before the IJ. After thorough review, we deny the petition.

We review the BIA's decision as the final agency decision, unless the BIA expressly adopted the IJ's decision. *Ruiz v. Gonzales*, 479 F.3d 762, 765 (11th Cir. 2007). Where the BIA either agreed with the IJ's findings or relied on the IJ's reasoning, we review both the BIA and IJ decisions to the extent of the agreement. *Mu Ying Wu v. U.S. Att'y Gen.*, 745 F.3d 1140, 1153 (11th Cir. 2014).

We review legal conclusions *de novo* and factual findings for substantial evidence. *Perez-Zenteno v. U.S. Att'y Gen.*, 913 F.3d 1301, 1306 (11th Cir. 2019). Under the substantial evidence standard, we view the evidence in the light most favorable to the agency's decision, draw all reasonable inferences in favor of that decision, and will affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole. *Id.* To reverse the fact findings, we must determine that the record not only supports reversal but *compels* it. *Id.* "[T]he mere

fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc).

To establish eligibility for asylum, a noncitizen must, with specific and credible evidence, establish (1) past persecution on account of a statutorily protected ground, or (2) a well-founded fear that the noncitizen will be persecuted on account of a protected ground. *Diallo v. U.S. Att'y Gen.*, 596 F.3d 1329, 1332 (11th Cir. 2010); 8 C.F.R. § 1208.13(a), (b). The protected grounds include, among other things, membership in a particular social group and political opinion. 8 U.S.C. § 1101(a)(42); 8 C.F.R. § 1208.13(a), (b).

To qualify for withholding of removal, a petitioner must establish that her "life or freedom would be threatened in [the] country [of removal] because of [her] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); *see also Cendejas Rodriguez v. U.S. Att'y Gen.*, 735 F.3d 1302, 1308 (11th Cir. 2013). A petitioner may satisfy her burden of proof either by: (1) demonstrating past persecution based on a protected ground, which creates a rebuttable presumption that her life or freedom would be threatened upon return to her country; or (2) demonstrating "that it is more likely than not that [s]he would face a future threat to [her] life or freedom upon removal due to a protected ground." *Cendejas Rodriguez*, 735 F.3d at 1308.

For both asylum or withholding of removal, an applicant must establish a nexus between the feared persecution and a protected ground, demonstrating that one of the enumerated grounds

"was or will be at least one central reason for persecuting" her. 8 U.S.C. § 1158(b)(1)(B)(i); *Sanchez-Castro v. U.S. Att'y Gen.*, 998 F.3d 1281, 1286 (11th Cir. 2021). "[E]vidence that either is consistent with acts of private violence . . . or that merely shows that a person has been the victim of criminal activity, does not constitute evidence of persecution based on a statutorily protected ground." *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1258 (11th Cir. 2006); *see Sanchez-Castro*, 998 F.3d 1288 ("Evidence that treatment is consistent with general criminal activity does not help [the noncitizen] with the nexus requirement.").

To show that a protected ground is "at least one central reason" for persecution, an applicant must show the protected ground is "essential" to the motivation of the persecutor, meaning it is not incidental, tangential, superficial, or subordinate to another reason for harm. *Sanchez-Castro*, 998 F.3d at 1286. In *Sanchez-Castro*, we concluded that the record did not compel a finding that the petitioner faced persecution from a gang on account of a particular social group of her nuclear family, noting that (1) several instances of harm to the family were "manifestly unrelated to her family status and instead establish that she and her family members have been the victims of ordinary criminal activity," (2) the record supported an inference that the gang acted indiscriminately instead of out of a desire to target her family, and (3) the record supported that, when the gang threatened the family in order to extort money from the petitioner's mother, it was targeting the family only incidentally, as a means to the end of obtaining money. *Id.* at 1286–87.

Political opinion persecution includes persecution on account of an "imputed political opinion," meaning the persecutor erroneously attributed a political opinion to the applicant and persecuted her on account of that mistaken belief about her political views. *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1289 (11th Cir. 2001). The Supreme Court has held that mere refusal to join a guerrilla organization did not qualify as the expression of a political opinion without further evidence showing that the refusal was "politically based." *See I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 482–83 (1992). It reasoned that there are a litany of reasons to resist pseudo-governmental groups other than disagreeing politically, and that the political opinion of the *perpetrator* is irrelevant to the analysis. *Id.*

Here, substantial evidence supports the BIA's determination that Osorio-Villalobos did not show that membership in either of her proposed social groups, or an imputed political opinion, was a central reason for any persecution she suffered and fears. As her statement and application reveal, a consistent pecuniary motivation explained most of the criminal acts she suffered -- including her claims that someone tried to extort $800 in exchange for her child's life, that others robbed her at gunpoint for her employment wages, and that gang members would demand a "tax" from her. The materials also reflect that the gang members never referenced her prior attempts to report or oppose them, but instead threatened her in connection with the new crimes they committed. Nor did the gang members ever reference her gender. Rather, the very first incident she described involved a man approaching her and her husband to demand her baby daughter.

Viewed as a whole, the evidence does not compel the finding of nexus between Osorio-Villalobos's harm and fear of future harm with any of her three bases: "Salvadoran women," "witnesses who report gang activity," or the imputed political opinion of an "anti-gang dissident." Her facts are more analogous to those in *Sanchez-Castro* because they detail indiscriminate criminal acts that were motivated primarily for pecuniary gain. 998 F.3d at 1286–88. Further, there was no evidence of any particular group-related motivation to harm Osorio-Villalobos. *Cf. Perez-Sanchez v. U.S. Att'y Gen.*, 935 F.3d 1148, 1158 (11th Cir. 2019) (finding a nexus where the record was replete with evidence that a cartel sought out and continuously extorted the petitioner because of his family's affiliation with the cartel and his "family relationship was one central reason, if not the central reason, for the harm visited upon [him]").

As for Osorio-Villalobos' argument that the gangs are de-facto governments, the mere act of resisting their authority does not express a political opinion, nor does it compel an inference that the gangs imputed a political opinion to her that they then persecuted her on account of. *See Elias-Zacarias*, 502 U.S. at 482–83. Indeed, Osorio-Villalobos testified that she was not in any groups in El Salvador and that others could not identify her with any group, other than being a single mother.

In short, there is reasonable, substantial, and probative evidence supporting the BIA's decision denying Osorio-Villalobos's claim of asylum and withholding of removal because she did not show the nexus element. Moreover, because substantial evidence

25-11196                Opinion of the Court                7

supports the determination that Osorio-Villalobos is ineligible for asylum or withholding of removal, we need not address her arguments about the cognizability of her asserted groups or the BIA's error in determining that she had withdrawn her political opinion claim before the IJ.

**PETITION DENIED.**