[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-10580

Non-Argument Calendar

_____

HECTOR DANIEL AGUILERA-GOMEZ,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A206-018-634

_____

Before GRANT, BRASHER, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Petitioner Hector Aguilera-Gomez, a native and citizen of Honduras, appeals the decision by the Board of Immigration Appeals ("BIA") to affirm the Immigration Judge's ("IJ") denial of his application for asylum and withholding of removal under sections 208(a) and 241(b)(3) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1158(a) and 1231(b)(3). Petitioner argued below that he was entitled to asylum and withholding of removal based on his well-founded fear of persecution in Honduras on account of his membership in a particular social group, namely: former law-abiding Honduran soldiers. The IJ denied Petitioner's application, finding that he did not establish past persecution or a well-founded fear of future persecution on account of his status as a former Honduran soldier. The BIA affirmed. After careful review, we discern no reversible error in the BIA's decision and likewise affirm.

## BACKGROUND

Petitioner left Honduras in April 2013, traveled through Guatemala and Mexico, and crossed the United States border near Hidalgo, Texas in May 2013. He was apprehended by immigration officials a few days after he crossed the border and served with a notice to appear in removal proceedings. The notice charged

Petitioner with having entered the United States without valid entry documents.

Petitioner admitted the allegations in the notice to appear and conceded his removability, but he indicated in a credible fear interview that he believed he would be harmed if he returned to Honduras. Petitioner explained in the interview that he had been a soldier in the Honduran military, and that he had been targeted by a group of drug traffickers who wanted him to use his military connection to help them acquire weapons and sell drugs. He claimed that the drug traffickers had threatened and physically attacked him three times before he resigned from the military and fled Honduras. According to the interview, the attacks began in November 2012, and concluded with an attack on December 25, 2012 during which the drug traffickers beat Petitioner and killed his cousin as a warning to Petitioner of what would happen to him if he refused to cooperate.

Petitioner subsequently filed an I-589 application seeking asylum and withholding of removal based on his membership in a particular social group.[1]    Consistent with his credible fear

---

[1] Petitioner also initially sought relief under the Convention Against Torture ("CAT"), but the IJ denied the CAT claim. Petitioner failed to challenge that ruling in his appeal to the BIA, and he did not raise the CAT claim in the briefing he filed in this Court. Accordingly, we do not consider the CAT claim in this appeal. See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) ("When an appellant fails to offer argument on an issue, that issue is abandoned.").

interview, Petitioner claimed in his I-589 application that drug traffickers in Honduras had targeted him because they knew he was a soldier in the Honduran military, and they wanted him to acquire weapons and sell drugs for them. He stated that the traffickers had attacked and threatened to kill him if he did not cooperate, and he explained that he had resigned from the Honduran military and left the country after the traffickers killed his cousin in front of him as a warning of what would happen to Petitioner if he did not cooperate.

In support of his I-589 application, Petitioner filed a document defining his particular social group as "[f]ormer law-abiding Honduran soldiers who are persecuted for being honest law-abiding soldiers." Petitioner also filed a 2017 country report noting the prevalence of drug trafficking organizations and gangs who committed violent crimes throughout Honduras, news articles describing the Honduran military's collusion with drug traffickers, a death certificate showing that Petitioner's cousin died from a gunshot wound, the sworn statement of Petitioner's aunt describing the assassination of Petitioner's cousin and the beating and threats Petitioner experienced during the incident, and a certificate verifying Petitioner's service in the Honduran military from March 2011 until April 2013.

Petitioner attached a sworn declaration to his I-589 application, in which he described the attacks and threats he allegedly experienced in Honduras. According to the declaration, the attacks began in September 2012, when four drug traffickers with guns

approached Petitioner while he was visiting his family home. Petitioner stated in the declaration that the traffickers targeted him after seeing him in his military uniform, and that they asked him to help them get guns and sell drugs to other Honduran soldiers. As recounted in the declaration, the traffickers threatened to kill Petitioner and his family when he refused their demands, but they ultimately released him. A second attack allegedly occurred in November 2012, when the same traffickers kidnapped Petitioner from a taxi stand, forced him into a car, and took him to an isolated location where they again attacked and threatened him, telling him that they needed guns and giving him a month to meet their demands.

The final attack described in the declaration allegedly occurred on December 25, 2012, when Petitioner was leaving his aunt's house with his cousin, Tony. Petitioner claimed in the declaration that six drug traffickers approached him and Tony on the street, and that they grabbed and punched Petitioner and shot Tony while stating that they were going to "teach [Petitioner] a lesson" because he had not "paid attention" and done what they had asked him to do. According to the declaration, the traffickers told Petitioner that next time he would be shot. Petitioner took Tony to the hospital, but he died on the way there. Petitioner said he reported the attack and shooting to the police, but the police told him they could not investigate without more evidence, including the names of the traffickers involved in the attack, which Petitioner did not know.

Petitioner stated in the declaration that after he returned to his military unit following the December 2012 attack, the drug traffickers came to his family home asking about his whereabouts. Afraid of further attacks and reprisals, Petitioner resigned from the military and left Honduras in April 2013, after which he traveled through Guatemala and Mexico and ultimately to the United States. Petitioner claimed in the declaration that in July 2013, after he left Honduras, the traffickers came to his house looking for him and beat his father.

In September 2018, while his I-589 application was pending, Petitioner filed a motion to terminate his removal proceedings. Petitioner argued in the motion that the immigration court lacked jurisdiction over the proceedings under *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), because the notice to appear that he received from DHS did not include a date, time, and location for Petitioner's removal hearing. The notice indicated that the date and time of Petitioner's removal hearing were "to be determined"—albeit, on the same day DHS also provided Petitioner with a separate notice indicating that his removal hearing was scheduled for July 16, 2013. The IJ denied Petitioner's motion to terminate, citing a decision by the BIA holding that the notice he had received was adequate to vest jurisdiction in the immigration court to continue with Petitioner's removal proceeding.

The IJ held a hearing on the merits of Petitioner's I-589 application in October 2018. Petitioner was the only witness who testified at the hearing, and his testimony echoed the declaration

21-10580                    Opinion of the Court                    7

filed in support of his I-589 application. Specifically, Petitioner testified that he was a soldier in the Honduran military until 2013, when he resigned and left Honduras after being attacked and threatened by drug traffickers who had asked him to help them get weapons and sell drugs. Petitioner described in his testimony the three attacks set out in his declaration, beginning with the attack in September 2012 and ending with the attack in December 25, 2012, during which Petitioner's cousin Tony was killed. Consistent with his declaration, Petitioner claimed in his testimony that the drug traffickers went to his family home in July 2013 and attacked his father. Petitioner explained that he was afraid to return to Honduras because it is a small country full of drug traffickers, where the police and military cannot protect him because of corruption in those institutions.

On cross-examination, Petitioner conceded that he was no longer in the Honduran military, and that the last time anyone in his family had been hurt or threatened by drug traffickers was in July 2013, over five years prior to date of the hearing. Petitioner admitted further that he did not know the identity of the traffickers who had threatened him five years prior, where they lived, or if they were still active—or even alive—today. Petitioner also acknowledged a few slight discrepancies between his testimony and his initial credible fear interview, which he attributed to confusion or memory lapse. For example, Petitioner stated in the credible fear interview that he was first attacked in November 2012,

rather than in September 2012 as he testified in his declaration and at the hearing.

At the conclusion of the hearing, the IJ issued an oral decision denying Petitioner's application for asylum and withholding of removal. The IJ found that Petitioner's testimony that he was recruited by drug traffickers to acquire weapons and sell drugs was credible, despite the minor discrepancies between Petitioner's testimony and his credible fear interview. Nevertheless, the IJ determined that Petitioner had failed to show that he suffered past persecution, and that he could not demonstrate that any persecution he suffered was related to his status as a "former law-abiding Honduran solder." As to the first point, the IJ concluded that Petitioner's testimony as to three beatings, with no medical documentation or further information as to the extent of his injuries, did not amount to persecution. Regarding the second point, the IJ pointed out that Petitioner was a current Honduran solder when the traffickers attacked him, and that based on Petitioner's own testimony the attacks were motivated by an effort to recruit Petitioner to assist the traffickers in their criminal enterprise rather than animus towards Honduran soldiers. As such, the IJ concluded, there was no nexus between Petitioner's alleged persecution and his enumerated statutory ground—that is, membership in a particular social group. Rather, Petitioner was in the same position as anyone else who faced reprisals after refusing to cooperate with a criminal organization.

The IJ made several alternative findings in support of denying Petitioner's application.  First, the IJ emphasized that Petitioner did not attempt to relocate internally in Honduras and thus could not show that his fear of persecution was countrywide, especially given Petitioner's admission that he did not know where the drug traffickers who had attacked him lived or whether they were still operating, or even alive, today.  Nor could Petitioner show, the IJ explained, that the Honduran police were unable or unwilling to protect him from the drug traffickers.  On this point, the IJ noted that the police had allowed Petitioner's aunt to file a report and that they had investigated her son Tony's murder.  For these reasons, and in addition to the persecution findings discussed above, the IJ concluded that Petitioner could not show that he was a refugee as required to obtain asylum under the INA.  Petitioner having failed to meet the lower burden of proof for showing persecution that is applicable to an asylum application, the IJ likewise determined that he could not show he was entitled to withholding of removal.

On appeal, the BIA agreed with the IJ that Petitioner could not show he was seriously injured or suffered permanent harm that rose to the level of past persecution.  The BIA further agreed that Petitioner did not establish that a statutorily protected ground—including membership in a particular social group, the ground asserted in Petitioner's application—was a central reason for his alleged persecution.  Specifically, the BIA found that Petitioner was not threatened or harmed on account of his status as a "former law-abiding Honduran soldier" as argued in his application, but rather

as a means of forcibly recruiting him to assist the drug traffickers in their criminal enterprise. Individuals targeted for forced recruitment by a cartel or gang, the BIA noted, are not generally recognized to be members of a cognizable social group. Accordingly, the BIA affirmed the IJ's denial of Petitioner's I-589 application and dismissed Petitioner's appeal. Petitioner did not challenge the IJ's ruling on his motion to terminate the removal proceedings in his BIA appeal, and the BIA did not consider the deficient notice issue in its decision on Petitioner's application.

Petitioner appeals the denial of his application for asylum and withholding of removal to this Court, arguing that the IJ and the BIA erred by concluding that he suffered no past persecution and that he could not establish a well-founded fear of future persecution based on his membership in the particular social group of "former law-abiding Honduran soldiers." Petitioner also argues in his reply brief that the IJ erred when she denied his motion to terminate the removal proceedings based on deficiencies in his notice to appear—including the lack of a date, time, and location for Petitioner's removal hearing—pursuant to the Supreme Court's decision in *Pereira*, although Petitioner did not appeal that ruling to the BIA and did not raise the deficient notice issue in the opening brief he filed in this Court. As discussed below, we are unpersuaded by Petitioner's arguments and thus affirm the BIA's decision denying his application for asylum and withholding of removal.

## DISCUSSION

### I.    Notice Deficiency

As an initial matter, Petitioner failed to administratively exhaust the deficient notice issue that he raises in his reply brief because he did not appeal the issue to the BIA. *See* INA § 242(d)(1), 8 U.S.C. § 1252(d)(1) (providing that a court may review a final order of removal only if "the alien has exhausted all administrative remedies available to the alien as of right"). This Court is thus precluded from considering Petitioner's deficient notice claim. *See Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006) ("[W]e lack jurisdiction to consider claims that have not been raised before the BIA." (internal quotation marks omitted)). Furthermore, Petitioner abandoned the deficient notice issue by failing to raise it in the opening brief he filed in this Court. *See United States v. Campbell*, 26 F.4th 860, 871–74 (11th Cir. 2022) (explaining that, while the abandonment rule is prudential rather than jurisdictional, this Court typically does not consider issues "not raised in the initial brief on appeal").

We note that Petitioner argued in the motion to terminate that he filed with the IJ that DHS's deficient notice deprived the immigration court of jurisdiction in his removal proceeding. This Court has held, to the contrary, that such a notice deficiency does not deprive the immigration court of jurisdiction. *See Perez-Sanchez v. U.S. Att'y Gen.*, 935 F.3d 1148, 1150 (11th Cir. 2019). Accordingly, there is no question as to the IJ's jurisdiction to conduct Petitioner's removal proceeding. Because the IJ had

jurisdiction to conduct the proceeding, and because Petitioner failed to administratively exhaust, and subsequently abandoned, the notice deficiency issue he raises in his reply brief, we do not consider the merits of the issue except to state that it is not a basis for reversing the IJ's and BIA's decision denying Petitioner's application for asylum and withholding of removal.[2]

## II.    Asylum and Withholding of Removal

### A.    Standard of Review

"When the BIA issues a decision" in a case arising under the INA, "we review only that decision, except to the extent the BIA expressly adopts the IJ's decision." *Lopez v. U.S. Att'y Gen.*, 504 F.3d 1341, 1344 (11th Cir. 2007). "Where the BIA agrees with the IJ's reasoning, we review the decisions of both the BIA and the IJ to the extent of the agreement." *Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016).

On petition for review of a BIA decision, we review legal conclusions *de novo* and factual determinations under the highly

---

[2] The Supreme Court's recent decision in *Niz-Chavez v. Garland*, 141 S. Ct. 1474 (2021) does not resurrect the deficient notice issue. In *Niz-Chavez*, the Court held that a notice to appear must be a single document containing all statutorily required information to trigger the stop-time rule for cancellation of removal. *See Niz-Chavez*, 141 S. Ct. at 1486. That holding has no bearing on our determination—per this Court's decision in *Perez-Sanchez*—that the IJ had jurisdiction in Petitioner's removal proceeding, or on our conclusion that we are precluded from reviewing the IJ's ruling on the deficient notice issue because of Petitioner's failure to raise the issue in his appeal to the BIA.

deferential substantial evidence test. *See id.* To apply the substantial evidence test, we "view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Lingeswaran v. U.S. Att'y Gen.*, 969 F.3d 1278, 1286 (11th Cir. 2020) (quotation marks omitted). Construing the record in that manner, "we must affirm the BIA's factual findings so long as they are supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* (quotation marks omitted). Pursuant to the substantial evidence test, "the mere fact that the record may support a contrary conclusion is not enough to justify . . . reversal" of a finding of fact made by the agency. *See Adefemi v. Ashcroft*, 386 F.3d 1022, 1028 (11th Cir. 2004). To reverse the agency's fact findings, we "must find that the record not only supports reversal, but compels it." *Perez-Zenteno v. U.S. Att'y Gen.*, 913 F.3d 1301, 1306 (11th Cir. 2019) (quotation marks omitted).

### B.    Asylum and Withholding of Removal Standards

Petitioner's I-589 application seeks asylum and withholding of removal pursuant to sections 208(a) and 241(b)(3)(A) of the INA. To obtain asylum, Petitioner must show that he qualifies as a "refugee" within the meaning of the INA. INA § 208(b)(1), 8 U.S.C. § 1158(b)(1). As relevant here, the INA defines a refugee as an individual who is outside his home country and who cannot return to that country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership

in a particular social group, or political opinion." INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A).

Petitioner, as the asylum applicant, bears the burden of proving that he satisfies the INA's definition of a refugee. *See* INA § 208(b)(1)(B)(i), 8 U.S.C. § 1158(b)(1)(B)(i). He can carry that burden by presenting "specific and credible evidence" that he suffered past persecution on account of a statutorily listed factor or that he has a "well-founded fear that the statutorily listed factor will cause future persecution." *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1257 (11th Cir. 2006) (quotation marks omitted). Where an applicant establishes past persecution, a rebuttable presumption arises that he has a well-founded fear of future persecution. *See id.* If the applicant cannot show past persecution, he must demonstrate a "well-founded fear of future persecution that is both subjectively genuine and objectively reasonable." *Id.*

Whether Petitioner proves his claim with evidence of past persecution or an objectively reasonable fear of future persecution, the persecution at issue must be "on account of a protected basis." *See Perez-Sanchez*, 935 F.3d at 1158. The connection between the alleged persecution and a protected ground is known as the "nexus" requirement. *See id.* To satisfy the nexus requirement, Petitioner must show that a statutorily protected ground set out in the INA was "at least one central reason" for his persecution. *Id.* (quotation marks omitted). "A reason is central if it is essential to the motivation of the persecutor." *Sanchez-Castro v. U.S. Att'y Gen.*, 998 F.3d 1281, 1286 (11th Cir. 2021) (quotation marks

omitted). "In other words, the protected ground cannot play a minor role in the . . . past mistreatment or fears of future mistreatment. That is, it cannot be incidental, tangential, superficial, or subordinate to another reason for harm." *Id.* (quotation marks omitted).

Similar to qualifying for asylum, Petitioner can show he is entitled to withholding of removal by proving that, if returned to his country, his life or freedom would be threatened on account of his "race, religion, nationality, membership in a particular social group, or political opinion." INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A). To carry his burden of proof as to withholding of removal, Petitioner must demonstrate that he "more likely than not" would be persecuted because of a protected ground if returned to his home country. *Sanchez-Castro*, 998 F.3d at 1286. "The more likely than not standard is more demanding than the well-founded fear standard, so an applicant who is ineligible for asylum is necessarily ineligible for withholding of removal." *Id.* (quotation marks omitted).

## C.    Analysis

The Government does not rely upon the finding that Petitioner's mistreatment in Honduras did not rise to the level of persecution as a reason to affirm the agency in this appeal, and it acknowledges that several of the IJ's other findings—for example, the finding that Petitioner failed to show the Honduran government was unable or unwilling to protect him or that he could not safely relocate internally within Honduras—are not properly

before the Court because the BIA did not rule on them. Nevertheless, the Government argues that the denial of Petitioner's I-589 application should be affirmed because there is substantial evidence in the record to support the agency's conclusion that Petitioner did not establish a nexus between his alleged persecution and his proffered protected ground—that is, membership in the particular social group of "former law-abiding Honduran soldiers." We agree that the agency's nexus finding is supported by substantial evidence in the record, and that it is dispositive of Petitioner's I-589 application.

As discussed above, Petitioner cannot prevail on his application for asylum or withholding of removal based solely on a showing of persecution or feared future persecution. Rather, he must show persecution "on account of" a statutorily protected ground. *See Perez-Sanchez*, 935 F.3d at 1158. That is, he must establish a nexus between his alleged persecution and a statutorily protected ground. *See id.* The agency found no such nexus here. Specifically, the agency determined that drug traffickers targeted Petitioner not because of any animus they had towards Honduran soldiers—and particularly not because of any animus they had towards Petitioner as a *former* Honduran soldier—but rather as part of a forcible recruitment of Petitioner. Mistreatment in furtherance of a forced recruitment effort, or on account of an individual's refusal to acquiesce to recruitment, generally does not constitute persecution on account of a statutorily protected ground. *See Rodriguez v. U.S. Att'y Gen.*, 735 F.3d 1302, 1310 (11th Cir. 2013)

("Evidence that either is consistent with acts of private violence or the petitioner's failure to cooperate with guerillas, or that merely shows that a person has been the victim of criminal activity, does not constitute evidence of persecution based on a statutorily protected ground." (quotation marks omitted and alteration adopted)).

There is an abundance of evidence in the record to support the agency's finding that the attacks and threats described by Petitioner were part of a forced recruitment effort rather than persecution on account of any animus towards Honduran soldiers. Most notably, Petitioner's own testimony shows that he was targeted by the traffickers because of his perceived access to weapons and a potential customer base for drug sales and not because of any animosity the traffickers had towards Honduran military personnel *per se*. Petitioner explained in his testimony that the first attack occurred when the traffickers saw him in his military uniform and thought he could "get weapons for them and sell drugs for them" within the military. According to Petitioner, the traffickers attacked him on two subsequent occasions after he refused to comply with their demands, and their threats were conditional on Petitioner's continued failure to cooperate.

Even in his appellate brief in this Court, Petitioner admits that he "was initially targeted because of his status as a soldier who could acquire weaponry and sell drugs within the military." That is, Petitioner was targeted for recruitment by drug traffickers because of his access to weapons and a potential customer base for

drug sales, in the same way a wealthy individual might be targeted by a criminal enterprise engaged in theft because of his access to money.  *See Sanchez-Castro*, 998 F.3d at 1287 (distinguishing between "persecution of a family as a means to an unrelated end from persecution based on animus against a family *per se*").  That type of private violence does not constitute persecution on account of a statutorily protected ground under the INA.  *Rodriguez*, 735 F.3d at 1310–11 (denying withholding of removal where the evidence showed "that the members of [the petitioner's] family were killed or kidnapped due to their failure to cooperate with drug traffickers or were the victims of criminal activity").  Nor does retaliation for a victim's failure to cooperate with a criminal gang—including the retribution Petitioner fears he will suffer at the hands of drug traffickers if he is returned to Honduras—establish a protected ground motive for future persecution.  *See id.*

The timing of the attacks described by Petitioner likewise supports the agency's finding that the attacks were made to forcibly recruit Petitioner and not because of any animus towards "former Honduran soldiers."  Petitioner testified that the three attacks he personally suffered by drug traffickers between September and December 2012 occurred while he was an active soldier in the Honduran military, rather than a former soldier.  Again, Petitioner suggested in his testimony that the attacks were motivated by his access to weapons and potential drug purchasers and not by any animosity towards military personnel.  Petitioner claimed the traffickers went to his family home and attacked his father on one occasion

in July 2013, but there is no evidence the traffickers knew at that time that Petitioner had resigned from the military. And in fact, Petitioner conceded in his testimony that the traffickers never attacked or threatened his family after July 2013, suggesting that they lost interest in Petitioner as soon as they discovered that he was no longer an active soldier of the Honduran military, with access to weapons and other soldiers for potential drug sales.

As discussed above, reversal of the agency's factual finding that Petitioner was not persecuted on account of his status as a former Honduran soldier—that is, the agency's nexus ruling—is only warranted if the record compels a contrary conclusion. It does not. On the contrary, the record evidence supports the agency's finding that, while Petitioner credibly testified that he was subjected to attacks and threats by drug traffickers in Honduras, the attacks and threats did not constitute persecution on account of a statutorily protected ground, as required for Petitioner to qualify as a refugee and under the INA. As such, the IJ and the BIA did not err by denying Petitioner's application for asylum and withholding of removal.

## CONCLUSION

For the foregoing reasons, we affirm the denial of Petitioner's application for asylum and withholding of removal.

**PETITION DENIED**