[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 24-10357

Non-Argument Calendar

————————————————

OSCAR ALBERTO DONAIRE-JARQUIN,
ILLKA JASMIN ZAVALA-SALGADO,
SANTIAGO ALEJANDRO DONAIRE-ZAVALA,

                                                    Petitioners,

*versus*

U.S. ATTORNEY GENERAL,

                                                    Respondent.

————————————————

Petition for Review of a Decision of the
Board of Immigration Appeals

Agency No. A220-809-667

_____

Before JILL PRYOR, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

Oscar Alberto Donaire-Jarquin, the lead petitioner here, petitions for review of the Board of Immigration Appeals' denial of his application for asylum, withholding of removal, and relief under the Convention Against Torture. He argues that the immigration judge and the BIA clearly erred in finding that his testimony was not credible and in denying relief. After careful review, we deny his petition for review.

## I.

Donaire-Jarquin, Illka Jasmin Zavala-Salgado, and Santiago Alejandro Donaire-Zavala are natives and citizens of Nicaragua. They entered the United States around November 19, 2021, without being admitted or paroled. About a week later, the Department of Homeland Security served them with Notices to Appear, charging them with being removable for being present in the United States without being admitted or paroled. All three petitioners conceded they were removable under the law.

In April 2022, Donaire-Jarquin applied for asylum, withholding of removal, and CAT relief. He included Zavala-Salgado and Donaire-Zavala as derivative beneficiaries. In his application, Donaire-Jarquin stated that he and Zavala-Salgado participated in a protest movement against Daniel Ortega, the President of

Nicaragua. According to Donaire-Jarquin, although the protests were peaceful, armed paramilitary groups attacked the protestors with tear gas and guns. Donaire-Jarquin also alleged that his home was attacked by a "Nicaraguan paramilitary 'death squad,' which included a group of some 20 motorcyclists who wore hoods and were armed with automatic rifles." The group allegedly attacked Donaire-Jarquin's home for about two-and-a-half hours, "throwing rocks and mortars at our home and shooting their rifles in the air." The group tried to break down the home's door, and left graffiti on the home calling the family "traitors."

Donaire-Jarquin further alleged that after the attack, similar groups came to his workplace and made death threats against him. He also alleged that Nicaraguan National Police sought him out and told him that he was under investigation as a political dissident. According to Donaire-Jarquin, the family fled the county out of fear of being "arrested, imprisoned, tortured, or killed as a member of the opposition against" Ortega. In support of his petition, Donaire-Jarquin also submitted declarations from his aunt and grand-mother, and he also submitted a Nicaraguan news article. The aunt's declaration stated that the paramilitary gang "attacked the house with . . . mortars." The grandmother's declaration did not mention mortars or gunfire. The aunt's declaration suggested, and the grandmother's declaration explicitly stated, that the attack stopped due to involvement from the Costa Rican consulate. The newspaper article stated that the homeowner's daughter filed a po-lice report due to the attack.

Donaire-Jarquin testified before the immigration judge about the attack on his home. Donaire-Jarquin testified that the paramilitary group attacked his home with mortars, which he defined as an "artisanal type of weapon . . . [w]here they use gun powder to create a cannon." The immigration judge asked Donaire-Jarquin whether the paramilitary group was shooting at the entire neighborhood, or at his house specifically, and Donaire-Jarquin responded that the group was shooting at only his house for two hours, nonstop. When asked by counsel whether he "report[ed] this incident to the police, or any human rights organization, or the press," Donaire-Jarquin responded that the press arrived the next morning to take pictures and statements, but he did not testify to filing a police report. He testified that the attack stopped when his neighbors began "making noise with cookware."

On cross-examination, Donaire-Jarquin agreed that the newspaper article he submitted as an exhibit said nothing about the house being attacked with mortars. The immigration judge then addressed three inconsistencies between Donaire-Jarquin's submitted evidence and his testimony. First, the police report. The immigration judge asked Donaire-Jarquin why the newspaper article said that a police report was filed after the attack, but Donaire-Jarquin testified that no report was filed. Second, the bullets hitting the house. The immigration judge asked Donaire-Jarquin to explain why the newspaper article did not mention anything about the house being shot at. Donaire-Jarquin did not answer the question directly, and he stated that everyone withheld information from the press out of fear. Third, after the immigration judge

confirmed that Donaire-Jarquin's testimony was that mortar fire hit his house, the immigration judge asked why the newspaper article showing pictures of the home after the attack did not show any damage.

The immigration judge continued to press Donaire-Jarquin about the multiple discrepancies between the record evidence and his testimony. Donaire-Jarquin eventually admitted that no one shot mortars or firearms at his home on the night of the alleged attack. When the immigration judge asked why he had lied about the mortars, Donaire-Jarquin stated that he believed "including it in [his] story . . . would be more convincing."

The immigration judge issued an oral decision, ruling that "[a]fter evaluating the totality of the evidence, the court concludes that [Donaire-Jarquin] was not a credible witness." The immigration judge highlighted Donaire-Jarquin's lack of candor, observing that he "embellished and exaggerated the incidents that took place in his house after being cross-examined by the government, and by the court." "After considering the totality of the circumstances, and all the relevant factors," the immigration judge concluded that Donaire-Jarquin's "disjointed, incredible at times, testimony, coupled with embellishments and false testimony, that he had to admit when confronted, and discrepancies between the affidavits filed by the respondent in support of his claim, and at times evasive demeanor when confronted with discrepancies, cannot support a claim for relief from removal." The immigration judge also ruled that Donaire-Jarquin's corroborating evidence did not support his

claim, as various parts of that evidence was contradictory and ran contrary to Donaire-Jarquin's testimony in court.

The BIA "agree[d] with the Immigration Judge's reasoning, and . . . adopt[ed] and affirm[ed] the Immigration Judge's decision." The BIA reasoned that Donaire-Jarquin did not establish that the immigration judge's credibility determination was clearly erroneous. [*Id.*] Indeed, the BIA highlighted Donaire-Jarquin's admission "that he embellished" the alleged attack on his home "to make it 'more convincing.'" The BIA also affirmed the immigration judge because Donaire-Jarquin's "corroborative evidence did not sufficiently rehabilitate [his] discredited testimony or independently satisfy [his] burden of proof." The BIA dismissed Donaire-Jarquin's appeal, and he timely appealed to this court.

## II.

Where, as here, the BIA adopts the reasoning of an immigration judge's decision, we review both decisions. *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009). In reviewing these decisions, we apply the substantial-evidence standard to factual and credibility determinations. *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1286 (11th Cir. 2005). We will affirm if the record, viewed as a whole and in the light most favorable to the decision, shows that the decision was supported by substantial, reasonable, and probative evidence. *Id.* An adverse credibility finding must be based on specific and cogent reasons. *Id.* at 1287. We will not disturb a factual finding, including an adverse credibility determination, unless the record compels reversal. *Id.* Demonstrating that the

record may also support a contrary conclusion cannot alone justify reversal. *Kazemzadeh*, 577 F.3d at 1351.

## III.

We will begin with the three different standards for asylum, withholding of removal, and CAT relief.

First, to be eligible for asylum, an applicant must prove that he either (1) has been persecuted in the past based on race, religion, nationality, membership in a particular social group, or political opinion; or (2) has a well-founded fear that he will be persecuted in the future on such grounds. *Chen v. U.S. Att'y Gen.*, 463 F.3d 1228, 1231 (11th Cir. 2006). "[N]ot all exceptional treatment is persecution." *Zheng v. U.S. Att'y Gen.*, 451 F.3d 1287, 1290 (11th Cir. 2006) (quoting *Gonzalez v. Reno*, 212 F.3d 1338, 1355 (11th Cir. 2000)). Rather, "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation." *Sepulveda v. U.S. Atty. Gen.*, 401 F.3d 1226, 1231 (11th Cir. 2005) (quotation marks omitted) (quoting *Gonzalez*, 212 F.3d at 1355).

Second, a non-citizen is eligible for withholding of removal under the Immigration and Nationality Act if they show that, on return to their country, they will more likely than not be persecuted in that country because of a protected ground, such as their membership in a particular social group. 8 U.S.C. § 1231(b)(3). The "more likely than not" standard for withholding of removal is more stringent than the asylum standard, as the applicant must show a clear probability of persecution instead of a well-founded fear. So if the applicant fails to meet the standard of proof for asylum, he

necessarily cannot meet the standard for withholding of removal. *Sanchez-Castro v. U.S. Att'y Gen.*, 998 F.3d 1281, 1286 (11th Cir. 2021).

Third, to obtain relief under the CAT, an applicant must meet a higher burden of proof than asylum requires and show that he will "more likely than not" be tortured if returned to the designated country of removal. 8 C.F.R. § 1208.16(c)(2). "In order to constitute torture, an act must be specifically intended to inflict severe physical or mental pain or suffering." 8 C.F.R. § 1208.18(a)(5). Additionally, the applicant must show that the torture would be by or with the consent or acquiescence of a public official or person acting in an official capacity. *Id.* § 1208.18(a)(1).

Under any of these three standards, an applicant's credible testimony may, by itself, establish eligibility for relief from removal. *Chen*, 463 F.3d at 1231. But an adverse credibility finding may form the basis for a denial of relief. *Id.* To determine credibility, an immigration judge may consider the testimony's consistency with record evidence, as well as the petitioner's candor. 8 U.S.C. § 1158(b)(1)(B)(iii). Even when making an adverse credibility determination, an immigration judge "must still consider *all* evidence introduced by the" petitioner. *Forgue*, 401 F.3d at 1287. But if the petitioner does not produce sufficient corroborating evidence other than his discredited testimony, then "an adverse credibility determination is alone sufficient to support the denial of" relief. *Id.*

Substantial evidence supports the BIA's decision upholding the immigration judge's finding that Donaire-Jarquin's testimony

was not credible. Because of inconsistencies between his testimony and submitted evidence, and because Donaire-Jarquin admitted to lying about mortars hitting his home, the immigration judge determined that Donaire-Jarquin failed to satisfy the standards for asylum, relief from removal, and relief under the CAT. Based on our review, substantial evidence supports the BIA and immigration judge's decision that the record lacks evidence to corroborate his version of the events. Therefore, "an adverse credibility determination is alone sufficient to support the denial" of relief. *Forgue*, 401 F.3d at 1287.

## IV.

We deny Donaire-Jarquin's petition for review.

**PETITION DENIED.**