[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 24-13008

Non-Argument Calendar

————————————————

HERNAN JOSE PARRA-VILLALOBOS,
NIDIA YAMILE TORRES-RODRIGUEZ,
MELANY GABRIELA PARRA-TORRES,

Petitioners,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

————————————————

Petition for Review of a Decision of the
Board of Immigration Appeals

Agency No. A240-611-652

_____

Before JORDAN, LUCK, and BRASHER, Circuit Judges.

PER CURIAM:

Nidia Yamile Torres-Rodriguez petitions for review of the Board of Immigration Appeals' denial of her applications for asylum, withholding of removal, and relief under the United Nations Convention Against Torture. She argues that the agency erred in its dispositive findings that she: (1) did not experience past harm on account of a protected ground that rose to the level of persecution; (2) did not demonstrate a well-founded fear of persecution; and (3) failed to show that the Colombian government would acquiesce to her torture if she were removed to Colombia. After careful consideration, we deny her petition for review. And because we deny her petition, we also deny her emergency motion to stay her removal.

## I.

Torres-Rodriguez and her family are natives and citizens of Columbia who entered the United States without being admitted or paroled. The Department of Homeland Security filed Notices to Appear with the immigration court charging them with being present in the United States without being admitted or paroled and as noncitizens not in possession of valid entry documents. *See* 8 U.S.C. § 1182(a)(6)(A)(i) & (7)(A)(i)(I). Torres-Rodriguez and her family conceded to the charges of removal.

Torres-Rodriguez later applied for asylum relief, withholding from removal, and relief under the Convention Against Torture. She included her spouse, Hernan Jose Parra-Villalobos, and their minor child as derivative beneficiaries. In her application, Torres-Rodriguez explained that ELN, an insurgent group, had threatened her over the phone because "[t]hey wanted to get information from" her "about the company [she] worked for." ELN "knew" that she managed sensitive financial information for a company that managed public funds, and ELN "felt entitled to that money and they saw [her] as a state official and for that reason they threatened [her]." According to Torres-Rodriguez, ELN told her that "if [she] did not comply with their demands, there would be consequences." Torres-Rodriguez also attached a sworn statement, the U.S. State Department's 2022 Human Rights Report for Colombia, and a news article reporting a bombing of a police post in Bogota.

Torres-Rodriguez gave similar testimony before the immigration judge. She testified that she supported the Colombian government, and that she agreed with the then-controlling Central Democratico party. Torres-Rodriguez testified that ELN attacked branches of the company that she worked for "where the money is distributed." She testified that she believed ELN attacked those places because "they are against the government . . . [t]hey're a revolutionary group . . . [t]hey're a terrorist group." Torres-Rodriguez further testified that ELN saw her company "as part of the government" because her company was "controlled by a government entity." She stated that ELN wanted "to take over the government"

and "be in power." And Torres-Rodriguez testified that they targeted her specifically "[b]ecause of the money being distributed," "the power [she] had over the funding," and "the control [she] had over the funding."

Torres-Rodriguez further testified that she received several threats from ELN against her life and her family. ELN guerillas would call her and demand that she transfer funds to them. Torres-Rodriguez testified that she did not report these threats to the police "[b]ecause of fear." ELN told Torres-Rodriguez that if she told the police about the threats, "the next house to be blown up would be [hers]." Torres-Rodriguez explained that before coming to the United States, she relocated within Colombia after ELN attacked a police station close to her house.

On cross-examination, Torres-Rodriguez agreed that ELN was a "criminal organization" that "goes after anyone; they don't care who the person is." She also agreed that the Colombian government "does not support the ELN." And although she was threatened, ELN never physically harmed Torres-Rodriguez while she was in Colombia.

The immigration judge issued an oral decision denying Torres-Rodriguez's petitions for asylum, withholding from removal, and Convention relief. As to the asylum petition, the immigration judge determined that Torres-Rodriguez failed to establish a nexus between her past persecution and a ground protected by law (race, religion, nationality, membership in a particular social group, or a political opinion). The immigration judge found, based

on the evidence, that ELN targeted Torres-Rodriguez "because she had access to government funds and that she had the ability to authorize payments to various points of sale throughout Colombia." Torres-Rodriguez "did not present any evidence that she was being persecuted because of a particular political opinion that she held." And although Torres-Rodriguez testified that she supported the government, she presented no evidence that she "actively participate[d] in any political activities." The immigration judge also rejected Torres-Rodriguez's related argument that she was persecuted based on an imputed political opinion. Again, the immigration judge reaffirmed that "ELN's threats [we]re motivated by their desire for money to fund their criminal enterprise."

The immigration judge denied Torres-Rodriguez's petition for withholding of removal because a petitioner "who fails to satisfy the lower asylum standard necessarily fails to satisfy the more stringent standard for withholding of removal." And the immigration judge denied Torres-Rodriguez's petition for Convention relief because "she has not shown that she is more likely than not to be tortured in her country by or at the instigation of or with the consent or acquiescence, including willful blindness, of a public official or other person acting in an official capacity." According to the immigration judge, "[t]he record evidence does not indicate a likelihood that a Colombian official would acquiesce in any torture inflicted upon [Torres-Rodriguez] by the ELN."

Torres-Rodriguez appealed to the Board. The Board affirmed the decision of the immigration judge without opinion. Torres-Rodriguez then petitioned this Court for review.

While the petition was pending, Torres-Rodriguez filed an emergency motion to stay her removal. Torres-Rodriguez cited upcoming, in-person meetings with immigration agents as the basis for seeking a stay. The government responded that there were no current plans for removal before May 23, 2025.

## II.

When the Board issues a summary affirmance of the immigration judge's decision without an opinion, we review the immigration judge's decision as the agency's final removal order. *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1230 (11th Cir. 2005). "[W]e review the agency's legal conclusions *de novo* and its factual determinations under the substantial evidence test." *Laguna Rivera v. U.S. Att'y Gen.*, 130 F.4th 915, 919 (11th Cir. 2025) (quotation marks omitted). We cannot engage in fact-finding on appeal nor weigh evidence that was not previously considered below. *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1255 (11th Cir. 2006). Further, under the highly deferential substantial-evidence test, we may not "reweigh the evidence from scratch." *Silva v. U.S. Att'y Gen.*, 448 F.3d 1229, 1236 (11th Cir. 2006) (quotation marks omitted). Whether persecution is on account of a protected ground is a question of fact that we review under the "substantial evidence" standard. *See Sanchez-Castro v. U.S. Att'y Gen.*, 998 F.3d 1281, 1286 (11th Cir. 2021).

"The substantial-evidence standard is highly deferential: we view the record in the light most favorable to the decision of the [agency] and affirm if the decision is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* at 1285 (quotation marks omitted). Under this standard, "[w]e may not reverse a finding of fact unless the record compels reversal." *Id.*

## III.

### A.

We first address the application for asylum. A noncitizen may be granted asylum if she qualifies as a refugee under the Immigration and Nationality Act. 8 U.S.C. § 1158(b)(1)(A). The term "refugee" includes "any person who is outside any country of such person's nationality" when that person is "unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of," among other things, "membership in a particular social group, or political opinion . . . ." 8 U.S.C. § 1101(a)(42)(A). The asylum applicant has the burden to prove statutory "refugee" status. 8 U.S.C. § 1158(b)(1)(B)(i). "To establish that the applicant is a refugee . . . the applicant must establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be *at least one central reason* for persecuting the applicant." *Id.* (emphasis added). "In determining whether the applicant has met the applicant's burden" of showing eligibility for asylum, "the trier of fact may weigh the

credible testimony along with other evidence of record." 8 U.S.C. § 1158(b)(1)(B)(ii).

So to demonstrate eligibility for asylum, an applicant "must, with specific and credible evidence, establish (1) past persecution on account of a statutorily listed factor, or (2) a well-founded fear that the statutorily listed factor will cause such future persecution." *Diallo v. U.S. Att'y Gen.*, 596 F.3d 1329, 1332 (11th Cir. 2010) (quotation marks omitted). "Only in a rare case does the record compel the conclusion that an applicant for asylum has suffered past persecution or has a well-founded fear of future persecution." *Id.* (quotation marks omitted, alteration adopted).

"Both past persecution and future persecution must be on account of race, religion, nationality, membership in a particular social group, or political opinion." *Sanchez Jimenez v. U.S. Att'y Gen.*, 492 F.3d 1223, 1232 (11th Cir. 2007) (quotation marks omitted). When persecution is based on a political opinion, it must be "on account of the *victim's* political opinion, not the persecutor's." *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 482 (1992). Further, "[t]he applicant must present specific, detailed facts showing a good reason to fear that he will be singled out for persecution on account of such an opinion." *Ruiz*, 440 F.3d at 1258 (quotation marks omitted). "Thus, evidence that either is consistent with acts of private violence or the petitioner's failure to cooperate with guerillas, or that merely shows that a person has been the victim of criminal activity, does not constitute evidence of persecution based on a statutorily protected ground." *Id.*

In rendering its decision, the immigration judge need not discuss every claim the petitioner raises, or every piece of evidence presented, as long as it has given reasoned consideration, made adequate findings, and "consider[ed] all the evidence submitted by the applicant." *Tan v. U.S. Att'y Gen.*, 446 F.3d 1369, 1374, 1376 (11th Cir. 2006). The immigration judge must only "consider the issues raised and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Id.* at 1374 (quotation marks omitted). We determined that an immigration judge failed to give reasoned consideration where the immigration judge: (1) misstated the contents of the record; (2) failed to afford a logical explanation for rejecting credible testimony; and (3) offered unreasonable explanations for dispositive findings. *Id.* at 1376–77.

Here, substantial evidence supports the agency's finding that the harm that Torres-Rodriguez suffered in the past was not "'*because of* [her] political opinion." *Rodriguez Morales v. U.S. Atty. Gen.*, 488 F.3d 884, 890 (11th Cir. 2007). Instead, ELN threatened Torres-Rodriguez due to her ability to control her former employer's funds and ELN's desire to fund its criminal enterprise. Torres-Rodriguez's actual or imputed political opinion was not a central reason for the harm that she experienced. Instead, Torres-Rodriguez's "evidence . . . is consistent with acts of private violence or [her] failure to cooperate with guerillas, or that merely shows that [she] has been the victim of criminal activity," which "does not constitute evidence of persecution based on a statutorily protected

ground." *Ruiz*, 440 F.3d at 1258; *see also Sanchez v. U.S. Atty. Gen.*, 392 F.3d 434, 437–38 (11th Cir. 2004).

Because substantial evidence supports the immigration judge's nexus determination, and because the immigration judge afforded reasoned consideration to Torres-Rodriguez's evidence, we need not reach her arguments as to whether the past harm that she experienced rises to the level of persecution. Accordingly, we deny her petition for review to the extent that it challenges the immigration judge's past-harm determination.

As to Torres-Rodriguez's arguments about a fear of future harm, "[a] showing of past persecution creates a rebuttable presumption of a well-founded fear of future persecution." *Sanchez Jimenez*, 492 F.3d at 1232. But "[b]oth past persecution and future persecution must be on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id*. Just like her evidence regarding past persecution, Torres-Rodriguez fails to connect any fear of future persecution to her actual or imputed political opinion.

### B.

A non-citizen is eligible for withholding of removal if she shows that, upon return to her country, she more likely than not will be persecuted there due to a protected ground. *Sepulveda*, 401 F.3d at 1232; 8 U.S.C. § 1231(b)(3); 8 C.F.R. § 208.16(b). "The 'more likely than not' standard is more demanding than the 'well-founded fear' standard, so an applicant who is ineligible for asylum is

necessarily ineligible for withholding of removal." *Sanchez-Castro*, 998 F.3d at 1286.

For the same reasons discussed above, substantial evidence supports the agency's determination that a protected ground would not be a central reason that Torres-Rodriguez might face harm again.

### C.

We review for substantial evidence the agency's conclusion that an applicant is ineligible for Convention protection. *See Sanchez-Castro*, 998 F.3d at 1288. To be eligible for Convention relief, an applicant must show that she more likely than not will be tortured if removed to the proposed country of removal. 8 C.F.R. § 1208.16(c)(2); *Reyes-Sanchez v. U.S. Att'y Gen.*, 369 F.3d 1239, 1242 (11th Cir. 2004). "Torture is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture." 8 C.F.R. § 1208.18(a)(2). We have explained that "[a] government does not acquiesce to torture where it actively, albeit not entirely successfully, combats the alleged torture." *Lingeswaran v. U.S. Att'y Gen.*, 969 F.3d 1278, 1294 (11th Cir. 2020) (quotation marks omitted).

In *Sanchez-Castro*, we determined that a gang's recruitment of spotters to warn when the police were on the way suggested that the police did not acquiesce to the gang's activities, as the gang would not need spotters if this were so. 998 F.3d at 1288. In response to the applicant's testimony that "police never arrived when

her family called for them," we explained that "even if [the applicant] were right that the police are not effective at controlling [the gang], it is dispositive that they are trying to do so." *Id.*

Here, substantial evidence supports the immigration judge's determination that Torres-Rodriguez failed to establish that the Colombian government would acquiesce to torture inflicted by ELN. Torres-Rodriguez's own testimony established that the Colombian government opposes ELN, and evidence that ELN is actively engaged in attacking the police establishes that the Colombian government does not acquiesce to the group's activities.

## IV.

We **DENY** the petition. We also **DENY** the related emergency motion for stay of removal.