[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 23-13293

Non-Argument Calendar

————————————————

PABLO VELASQUEZ,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

————————————————

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A205-855-024

————————————————

Before LAGOA, ANDERSON, AND WILSON, Circuit Judges.

PER CURIAM:

Petitioner Pablo Velasquez petitions for: (1) review of the final order of the Board of Immigration Appeals (BIA) affirming the Immigration Judge's (IJ) denial of withholding of removal under Section 241(b)(3) of the Immigration and Nationality Act, 8 U.S.C. § 1231(b)(3); and (2) relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment (CAT), 8 C.F.R. § 1208.16(c).

There are four issues on appeal: (1) whether Velasquez's petition was timely filed; (2) whether substantial evidence supports the BIA's conclusion that Velasquez's withholding claim fails because he failed to establish the nexus requirement; (3) whether substantial evidence supports the BIA's conclusion that his CAT claim fails because he did not establish that the Honduran government would acquiesce to his torture or that his alleged torturer would be acting under the color of law; and (4) whether the BIA and IJ deprived Velasquez of a full and fair hearing by committing multiple errors and by misstating the record. After careful review, we find no error and deny the petition.

## I.

Velasquez, a native and citizen of Honduras, has entered the United States and been deported more than once.[1] As relevant

---

[1] He first encountered U.S. Immigration and Customs Enforcement (ICE) in 2013. The Department of Homeland Security (DHS) served Velasquez with a

here, in 2022, ICE officers encountered Velasquez in the United States for a third time, and Velasquez had not been inspected, admitted, or paroled. In June 2022, DHS sent Velasquez notice of its decision to reinstate its prior order of removal.

In December 2022, Velasquez conducted a reasonable fear interview with asylum officers in which he explained that he experienced past harm in his country. Velasquez stated that a known drug gang from his hometown beat him, unknown men shot his leg, his sister's ex-husband threatened to kill him if he returned to Honduras, and unknown men in a vehicle threatened to kill him. Based on those occurrences, Velasquez believed that criminal gangs would kill him if he returned to Honduras. An asylum officer found that Velasquez was credible and that there was a reasonable possibility that Velasquez had established a reasonable fear of torture. Following Velasquez's reasonable fear interview, an immigration officer referred Velasquez's case to an IJ, and the IJ began hearings for Velasquez's withholding-only proceedings but gave

---

notice to appear, charging him as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i), for being present in the United States without being admitted or paroled; and under 8 U.S.C. § 1182(a)(7)(A)(i)(I), for being present in the United States without proper entry documents. In 2017, an IJ ordered Velasquez to be removed to Honduras in absentia, and ICE officers physically removed him there. In 2018, ICE officers again encountered Velasquez in the United States. Velasquez admitted that he had re-entered without being inspected, admitted, or paroled. The officers reinstated Velasquez's prior order of removal, and in 2022, they physically removed Velasquez to Honduras.

Velasquez leave to retain an attorney and file an Application for Asylum and for Withholding of Removal (I-589).[2]

In January 2023, Velasquez filed an I-589, providing that he sought relief based on his political opinion, membership in a particular social group, and CAT. He stated that he had experienced past harm, mistreatment, or threats; that he feared harm or mistreatment if he were to return to his home country; that he feared being subjected to torture in his home country; and that he experienced and feared harm after being deported to Honduras previously.

In March 2023, the IJ began merits hearings for Velasquez's withholding-only proceedings, and Velasquez appeared with counsel and presented witness testimony. Velasquez affirmed his intent to seek relief under CAT and withholding of removal based on political opinion and membership in a particular social group. Velasquez clarified that he was being targeted for his political opinion based on defense of his sister against her ex-husband, his brother-in-law, who is a political figure in Honduras. He also argued that he was being targeted based on his family relationship with his sister for having publicly stood up against her husband, his brother-in-law, to stop him from committing domestic violence against

---

[2] Only withholding of removal was available as relief. *See* 8 U.S.C. § 1231(a)(5); *Fernandez–Vargas v. Gonzales*, 548 U.S. 30, 34–35 & n. 4 (2006) (providing that, although a litigant may not seek asylum following the reinstatement of a prior removal order, he may still seek withholding of removal).

Velasquez's sister. Ultimately, the IJ issued a written decision, denying Velasquez's request for withholding of removal and CAT relief.

Velasquez appealed the IJ's decision. In September 2023, the BIA dismissed Velasquez's appeal. The BIA determined that, because Velasquez failed to demonstrate his past and feared future harm was on account of a protected ground, he failed to establish the requisite nexus to a protected ground. And the BIA affirmed the IJ's denial of Velasquez's request for protection under CAT, adopting the reasoning by the IJ. In October 2023, Velasquez appealed the BIA's decision.

## II.

We turn first to whether Velasquez's petition was timely filed. Velasquez argues that his petition is timely because the Respondent has waived any timeliness argument. The INA provides that a petition for review of an order of removal must be filed no later than "30 days after the date of the final order of removal." 8 U.S.C. § 1252(b)(1). The INA further provides that an order of deportation is final when the BIA affirms the order or when the time to appeal the order to the BIA expires, whichever is earlier. 8 U.S.C. § 1101(a)(47)(B).

In *Riley v. Bondi*, the Supreme Court held that "§ 1252's 30-day filing rule is not jurisdictional" and is, instead, a claim-processing rule. 145 S. Ct. 2190, 2203–04 (2025). Unlike jurisdictional rules, claim-processing rules "can be waived or forfeited by an opposing party." *Nutraceutical Corp. v. Lambert*, 586 U.S. 188, 192 (2019).

Here, Respondent the U.S. Attorney General raises the timeliness issue but then both concedes and waives the issue in its initial brief. Because Respondent affirmatively waived the issue, we need not address it and may proceed to address the remaining issues on the merits.

## III.

We turn next, therefore, to whether substantial evidence supports the BIA's conclusion that Velasquez's withholding claim fails because he failed to establish the nexus requirement.[3] In substantively reviewing the agency's decision, we review only the

---

[3] Velasquez also argues that the BIA failed to give reasoned consideration to his proposed particular social group and failed to develop a finding on his political opinion, constituting a due process violation. We review constitutional challenges to removal proceedings de novo. *Alhuay v. U.S. Att'y Gen.*, 661 F.3d 534, 548 (11th Cir. 2011) (per curiam). "In order to establish a due process violation, [a litigant] must show that he . . . was deprived of liberty without due process of law, and that the asserted error caused him substantial prejudice." *Garcia v. U.S. Att'y Gen.*, 329 F.3d 1217, 1222 (11th Cir. 2003) (citations omitted). "To show substantial prejudice, the petitioner must show the alleged due process violation would have affected the outcome of the case." *Avila v. U.S. Att'y Gen.*, 560 F.3d 1281, 1285 (11th Cir. 2009) (per curiam). The BIA "[a]ssum[ed] arguendo that [Velasquez's brother-in-law] was behind the attacks," and it denied Velasquez's claims based on its finding that the brother-in-law was motivated by vengeance rather than by Velasquez's proposed particular social group or political social group. Thus, Velasquez cannot prevail on his arguments that the BIA violated his due process rights by failing to give reasoned consideration to his proposed particular social group and failing to develop a finding on his political opinion, because this alleged violation would not affect the outcome of the case. *See Alhuay*, 661 F.3d at 548; *Garcia*, 329 F.3d at 1222; *Avila*, 560 F.3d at 1285.

decision of the BIA, unless the BIA expressly adopts the IJ's decision. *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009). When the BIA agrees with the IJ's reasoning, we will also review the IJ's decision to that extent. *Id.* "[W]e view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Sanchez Jimenez v. U.S. Att'y Gen.*, 492 F.3d 1223, 1230 (11th Cir. 2007) (quotation marks omitted).

Under the INA, a noncitizen shall not be removed to a country if his life or freedom would be threatened in such country on account of "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). Thus, "an applicant must prove that it is more likely than not that []he will be persecuted or tortured *because of* a protected ground if returned to [his] home country." *Sanchez-Castro v. U.S. Att'y Gen.*, 998 F.3d 1281, 1286 (11th Cir. 2021).

This causal element necessary to establish eligibility under withholding proceedings is "known as the nexus requirement." *Id.* The nexus requirement requires a noncitizen to establish that a protected ground "was or will be at least one central reason for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i). We have explained that "[a] reason is central if it is essential to the motivation of the persecutor." *Sanchez-Castro*, 998 F.3d at 1286 (internal quotation marks omitted). Since "[w]e do not consider issues that were not reached by the BIA," *Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016) (per curiam), where the BIA "considered only the

nexus requirement, we review only whether substantial evidence supports its finding that [the noncitizen] did not satisfy that requirement," *Sanchez-Castro*, 998 F.3d at 1286.

Under the substantial evidence test, we will reverse the BIA's factual findings only when the record compels it. *Rodriguez v. U.S. Att'y Gen.*, 735 F.3d 1302, 1308 (11th Cir. 2013) (per curiam). We must affirm "[i]f the BIA's decision is supported by reasonable, substantial, and probative evidence when the record is considered as a whole." *Lyashchynska v. U.S. Att'y Gen.*, 676 F.3d 962, 967 (11th Cir. 2012).

With respect to a proposed family-based particular social group claim, "we distinguish persecution of a family as a means to an unrelated end from persecution based on animus against a family *per se*." *Sanchez-Castro*, 998 F.3d at 1287. We have further held that "[e]vidence that treatment is consistent with general criminal activity does not help [the noncitizen] with the nexus requirement." *Id.* at 1288. With respect to a political opinion claim, "[p]ersecution on account of political opinion is persecution on account of the *victim's* political opinion, not the persecutor's." *Sanchez v. U.S. Att'y. Gen.*, 392 F.3d 434, 437–38 (11th Cir. 2004) (quotation marks omitted and alteration adopted).

We find that substantial evidence supports the BIA's decision that Velasquez failed to establish a causal connection between his alleged protected ground and harm. Turning first to Velasquez's particular social group claim, Velasquez's brother-in-law has not harmed any of their family members remaining in

Honduras, and Velasquez did not cite evidence that his brother-in-law would target him if not for his intervention in the prior marital relationship between Velasquez's sister and the brother-in-law. Turning next to Velasquez's political opinion claim, the BIA concluded that his brother-in-law "was motivated by personal retribution rather than a protected ground" because his brother-in-law desired retribution against Velasquez for diminishing his public standing. Velasquez did not offer compelling evidence otherwise. Moreover, Velasquez's expert witness testified respecting general criminal activity in Honduras, which does not help Velasquez establish his requirement.

Based on this record evidence, we find that substantial evidence supports the BIA's finding that Velasquez did not satisfy the nexus requirement. Accordingly, we deny the petition as to this issue.

**IV.**

We turn next to whether substantial evidence supports the BIA's conclusion that his CAT claim fails because he did not establish that the Honduran government would acquiesce to his torture or that his alleged torturer would be acting under the color of law.

CAT protection is available if Velasquez shows "that it is more likely than not that [he] would be tortured by [his] government" if he goes back to Honduras,  or "that it is more likely than not that with the instigation, consent, or acquiescence of a public official or other person acting in an official capacity," torture would occur if he goes back to Honduras. *K.Y. v. U.S. Att'y Gen.*, 43 F.4th

1175, 1180 (11th Cir. 2022) (per curiam), *overruled in part on other grounds*, 598 U.S. 411, at 419–23 & n.2 (2023); *see also* 8 C.F.R. §§ 1208.16(c), 1208.18(a).

> "Torture" is defined as
>
> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind . . .

8 C.F.R. § 1208.18(a)(1).[4]

"In addition, to qualify as 'torture' an act must be inflicted outside the realm of lawful sanctions by, at the instigation of, or with the consent or acquiescence of a public official or other person acting in an official capacity." *K.Y.*, 43 F.4th at 1180. "Acquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." 8 C.F.R. § 1208.18(a)(7). The Supreme Court

---

[4] The regulation further provides that torture is an "extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture." 8 C.F.R. § 1208.18(a)(2).

has explained that "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." *United States v. Classic*, 313 U.S. 299, 326 (1941); *see also United States v. Belfast*, 611 F.3d 783, 808 (11th Cir. 2010) (explaining that, under CAT, there is no distinction between the meaning of the phrases "under the color of law" and in "an official capacity").

The Supreme Court has also held that a non-citizen may meet his burden for relief though circumstantial evidence. *See I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 483 (1992) (applying rule to non-citizen's burden to prove his persecutor's motives for asylum relief). That said, a successful claim for protection under the CAT requires "more than pure speculation." *Reyes-Sanchez v. U.S. Att'y Gen.*, 369 F.3d 1239, 1242 n.7 (11th Cir. 2004). The inability of the police to end tortious acts does not necessitate a finding that the government "acquiesced" in such acts. *Id.*

Here, substantial evidence supports the BIA's decision that Velasquez failed to establish eligibility under CAT. The BIA cited multiple pieces of evidence tending to show lack of government acquiescence: evidence that police took a report when he was threatened in 2022; that the lack of arrests was not sufficient to show government acquiescence; and that some criminals exhibited fear of authorities by attempting to hide their identities. The BIA also concluded that Velasquez failed to meet his burden of establishing it would be more likely than not that his brother-in-law would be acting under the color of law where the brother-in-law's

involvement in politics was unclear from the record. And while Velasquez argues otherwise, nothing in the record suggests this conclusion is wrong or that it should be reversed. Accordingly, we deny the petition as to this issue.

## V.

We turn finally to whether the BIA and IJ deprived Velasquez of a full and fair hearing by committing multiple errors and by misstating the record. Individuals facing removal are entitled to due process, which is satisfied "only by a full and fair hearing." *Alhuay v. U.S. Att'y Gen.*, 661 F.3d 534, 548 (11th Cir. 2011) (per curiam) (quotation marks omitted).

Here, as noted previously, because the BIA denied Velasquez's withholding claim based on its dispositive nexus analysis, we need not consider Velasquez's arguments regarding his proposed particular social group or political opinion. Similarly, we need not consider Velasquez's arguments that the IJ erred in finding that there was no evidence that the brother-in-law still lived in Honduras, because the BIA did not adopt that alleged error. Moreover, Velasquez's argument that the IJ issued an oral decision is unavailing, because, at the hearing, the IJ expressly stated, "I'll reserve decision on this, and I'll write up a decision."

Similarly, his argument that the BIA erred in not finding that criminals remove their license plate to avoid scandal or public exposure fails because his own expert witness undermined this assertion by testifying that the absence of a license plate signifies that the car occupants were likely involved in a gang because "it makes

it less likely that [the gang members] would be identifiable." Velasquez argued in his brief that the IJ and BIA erred in finding that public officials took a report of his complaint that he had been kidnapped because they never took a report. But the record evidence about whether a police report was filed is confusing and muddled at best. He testified that he did not know if authorities wrote a report for the kidnapping incident particular incident, and he confirmed that authorities wrote a report for a later incident where he received a death threat.[5]

We find that Velasquez's arguments that the IJ and BIA misstated the record are factually unavailing, that substantial evidence supports the IJ's and BIA's decision, and that he received a full and fair hearing. Accordingly, we deny the petition as to this issue.

**PETITION DENIED.**

---

[5] Velasquez's arguments regarding alleged misstatements of the record also fail, because he cannot show how these alleged errors affected the outcome of the case where substantial evidence otherwise supports the IJ's and BIA's decision. With respect to his cumulative error argument, because there was no error, there can be no cumulative error.